**DENBURY ONSHORE, LLC, Appellant**

v.

**TEXCAL ENERGY SOUTH TEXAS, L.P., and Venoco, Inc., Appellees**

**NO. 14–15–00439–CV**

Court of Appeals of Texas, Houston (14th Dist.).

Opinion filed December 6, 2016

Stephen L. Tatum, Fort Worth, TX, J. Albert Kroemer, Dallas, TX, Lionel M. Schooler, Houston, TX, for Appellant.

Aundrea Gulley, Barrett H. Reasoner, Houston, TX, for Appellees.

Panel consists of Chief Justice Frost, and Justices Boyce and Brown.

## OPINION

Marc W. Brown, Justice

Denbury Onshore, LLC, challenges the district court's judgment confirming an arbitration award in favor of TexCal Energy South Texas, L.P., and Venoco, Inc. (collectively, Venoco), and denying Denbury's motion to vacate or modify the award. Finding no error, we affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Denbury's business focuses on enhanced oil recovery using $CO_2$ injection. Denbury owns $CO_2$ deposits near Jackson, Mississippi, in fields known as Jackson Dome. TexCal, whose parent company is Venoco, owned a majority interest in certain producing mature oil and gas fields in Galveston and Brazoria Counties, Texas, known as Hastings. Denbury planned to acquire interests in oil and gas fields, starting with Hastings, and then supply $CO_2$ from Jackson Dome to recover oil from such fields.

Denbury and Venoco began negotiations and, in November 2006, signed an Option Agreement. Venoco granted Denbury an option to purchase Venoco's majority interest in Hastings. Should Denbury exercise its option, Venoco would convey this inter-

est. Once Denbury recouped its investment and operating costs and began receiving revenue from oil produced from Hastings, or achieved "payout," Denbury would convey 25 percent of the conveyed interest back to Venoco. Calculation of this payout date was dependent on Denbury's "$CO_2$ Costs," or the "direct cost of acquiring (commodity cost) and delivering (transportation cost) $CO_2$" to Hastings.[1] Effective January 2009, Denbury exercised its option and Venoco assigned its interest in Hastings to Denbury.

During the next two years, Denbury built the Green Pipeline to transport $CO_2$ from Denbury's closest pipeline in Louisiana to Hastings and other fields in Texas at an actual cost of approximately $905 million. The Green Pipeline was designed and built to transport a capacity throughput of 800 MMcf per day. Denbury began charging its $CO_2$ Costs against Venoco's payout account. In 2012, however, an audit revealed that Denbury was charging Venoco more than expected.

Pursuant to an arbitration provision in the Option Agreement, Venoco brought a claim in arbitration against Denbury for declaratory judgment. After an evidentiary hearing, the three-member neutral arbitration panel unanimously declared the meaning of the disputed language of the "transportation costs" and the "commodity costs" provisions of the Option Agreement and issued an award in Venoco's favor. The panel issued two modifications and clarifications to the award.

Denbury filed an application to modify and vacate the arbitration award in Harris County district court.[2] Denbury argued that the award was not based on sufficient evidence, exceeded the authority of the arbitrators, and was in manifest disregard of the law. In the application, Denbury asserted that "[t]he panel exceeded its powers by making an incorrect value judgment regarding the application of a contract clause." Denbury also indicated that Venoco and Denbury had contracted for judicial review of the arbitration award for reversible error as permitted by the Su-

---

1. The Option Agreement further defines "transportation costs" and "commodity costs":

 (i) transportation costs (before and after Payout) shall be (x) the actual costs on a per mcf basis charged by unaffiliated third party transporters, or (y) in the event [Denbury] owns the pipeline transporting $CO_2$ to the Assets, a per mcf fee not to exceed the amount necessary to amortize the actual cost of constructing and operating that portion of the line on which the $CO_2$ is transported to the Assets, based on a capacity throughput of 400 MMcf/d over a twenty (20) year period, at a discount rate of six hundred fifty basis points over the one year LIBOR (if the one year LIBOR is five and one-half percent (5.5%) the discount rate used to amortize tile pipeline would be 12%), but in no event shall the discount rate be less than 12%.
 (ii) commodity costs (before and after Payout) shall be the lower of (x) the average direct cost of $CO_2$ in [Denbury's] or third

 party's pipeline from which $CO_2$ is acquired for the Assets and (y) the lowest price charged for $CO_2$ by [Denbury] in sales to third party users or consumers in Texas. In no event shall the average cost per mcf of $CO_2$ delivered to the Assets exceed one percent (1%) of the average NYMEX oil closing price per barrel during the month of delivery; provided the foregoing cap on $CO_2$ prices shall never be less than $.30 per mcf. A "mcf" of $CO_2$ shall be 1000 cubic feet of $CO_2$ at standard conditions. [Denbury] shall deliver $CO_2$ to the Assets at a pipeline pressure of not less than 1100 psi.

2. In the jurisdiction section of its application, Denbury invoked subchapter D of the Texas General Arbitration Act (TAA), Tex. Civ. Prac. & Rem. Code §§ 171.081–171.098. *See, e.g.*, Tex. Civ. Prac. & Rem. Code Ann. § 171.082(a) (West 2011) (providing that "[t]he filing with the clerk of the court of an application for an order under this chapter, including a judgment or decree, invokes the jurisdiction of the court").

preme Court of Texas's opinion in *Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84 (Tex. 2011), and that Denbury wanted the trial court to conduct such a review.

Venoco moved to confirm the arbitration award. After a hearing, the district court issued its order granting Venoco's motion to confirm and denying Denbury's motion to modify and vacate. Denbury appealed.

## II. ANALYSIS

Overall, Denbury challenges the district court's grant of Venoco's motion to confirm the arbitration award and denial of Denbury's motion to modify or vacate the award. In particular, in its opening brief on appeal, Denbury argues that the district court erred by applying the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 *et seq.*, instead of the Texas General Arbitration Act (TAA), Tex. Civ. Prac. & Rem. Code Ann. § 171.001 *et seq.* (West 2011), to the agreement, effectively negating the parties' clear intent to allow the trial court to review the arbitration award for reversible error, and by failing to adhere to the holding in *Nafta Traders* to conduct expanded judicial review. Denbury further contends that the panel's declarations of the meaning of "commodity costs" and "transportation costs" in the award are not supported by legally or factually sufficient evidence, and the district court erred by not setting aside those portions of the award. Finally, if this court determines this matter is governed by the FAA, then Denbury maintains that the arbitration panel exceeded its powers or so imperfectly executed them that a mutual, final, and definite award was not made.

However, Denbury no longer appeals the panel's declaration of the meaning of the "commodity costs" provision, but rather only its declaration of the meaning of the "transportation costs" provision. In its reply brief, Denbury notified this court

that "[i]n light of the Supreme Court's decision in *Hoskins* [*v. Hoskins*, 497 S.W.3d 490 (Tex. 2016) ]," Denbury is no longer challenging the trial court's judgment based on any argument "with respect to that portion of the Panel's Award denying Denbury recovery of its Depreciation, Depletion and Amortization (DD&A) as a cost of producing $CO_2$."

We review de novo a trial court's decision to confirm or vacate an arbitration award under the FAA or the TAA. *D.R. Horton-Tex., Ltd. v. Bernhard*, 423 S.W.3d 532, 534 (Tex. App.–Houston [14th Dist.] 2014, pet. denied) (TAA); *Amoco D.T. Co. v. Occidental Petroleum Corp.*, 343 S.W.3d 837, 844 (Tex. App.–Houston [14th Dist.] 2011, pet. denied) (FAA). Review of an arbitration award is extraordinarily narrow. *Patel v. Moin*, No. 14–15–00851–CV, 2016 WL 4254016, at *2 (Tex. App.–Houston [14th Dist.] Aug. 11, 2016, pet. filed) (mem. op.) (TAA); *Amoco D.T.*, 343 S.W.3d at 841. All reasonable preferences are indulged in favor of the award. *Patel*, 2016 WL 4254016, at *3; *Amoco D.T.*, 343 S.W.3d at 841. A party seeking to vacate an award bears the burden of presenting a complete record that establishes grounds for vacatur. *Patel*, 2016 WL 4254016, at *2; *Amoco D.T.*, 343 S.W.3d at 841.

An arbitration award governed by the FAA or the TAA must be confirmed unless it is vacated, modified, or corrected under certain limited grounds. *See* 9 U.S.C. § 9; Tex. Civ. Prac. & Rem. Code Ann. § 171.087. An arbitration award shall be vacated under the FAA upon application only when the award was procured by corruption, fraud, or undue means; there was evident partiality or corruption in the arbitrators; the arbitrators were guilty of misconduct in refusing to postpone the hearing for sufficient cause, in refusing to hear pertinent and material evidence, or any other misbehavior which prejudiced

any party's rights; or the arbitrators exceeded their powers or so imperfectly executed them that a mutual, final, and definite award was not made. 9 U.S.C. § 10(a); *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008).

An arbitration award shall be vacated under the TAA upon application only when the award was obtained by corruption, fraud, or undue means; the rights of a party were prejudiced by evident partiality by an arbitrator appointed as a neutral arbitrator, corruption in an arbitrator, or misconduct or willful misbehavior by an arbitrator; the arbitrators exceeded their powers, refused to postpone the hearing after a showing of sufficient cause for postponement, refused to hear material evidence, or conducted the hearing in a manner that was contrary to one of five sections of the TAA and that substantially prejudiced the rights of a party; or there was no agreement to arbitrate, the issue was not adversely determined in a proceeding to compel or stay arbitration, and the party did not participate in the arbitration hearing without raising the objection. Tex. Civ. Prac. & Rem. Code Ann. § 171.088(a); *Hoskins*, 497 S.W.3d at 494.

### A. The parties' arbitration agreement

In section 19.12, "Mediation and Arbitration," the Option Agreement states:

The Parties stipulate and agree that any and all claims and/or controversies arising between [them] which relate to and arise out of this Agreement shall be resolved in accordance with the mediation and arbitration procedures set forth in Exhibit "P." The prevailing party in any legal proceeding or arbitration may be entitled to recover all arbitration costs and reasonable attorneys' fees from the non-prevailing party, as determined by the arbitrators in accordance

with the procedures set forth in Exhibit "P."

In relevant part, Exhibit "P" provides:

The matter shall be decided by two (2) arbitrators (or three if required below) chosen in the manner set forth below, who shall be a licensed attorney at law in the State of Texas (in good standing with the State Bar of Texas) and knowledgeable about the subject matter of the dispute. Except to the extent inconsistent with the provisions hereof, the arbitration shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1, et seq.; provided, however, that the arbitrators shall issue a joint, written decision which shall include a list of findings, with supporting evidentiary references, and reasons, upon which the arbitrators have relied in making their decision. The place of arbitration shall be Houston, Texas, unless otherwise agreed to by the Parties.

Exhibit "P" also provides:

Notwithstanding anything herein and regardless of any procedures or rules of International Institute for Conflict Prevention and Resolution ("CPR"), it is expressly agreed that the following shall apply and control over any other provision in this Exhibit:

. . .

(h) The decision, made in writing and signed by the two (2) arbitrators if only two (2) are appointed or signed by any two of the three (3) arbitrators if a third arbitrator is appointed pursuant to the terms hereof, shall determine such dispute. Such decision shall be made, signed, and delivered to the Parties as promptly as possible. The final decision of the arbitrators shall be binding and non-appealable, except as provided herein. A Judgment conferring [sic] the award of the arbitrators may be rendered in the appropri-

ate court of competent jurisdiction. The parties agree that an award made by the Panel may be vacated by a court only if the award has been procured by or through fraud, or corruption. An appeal from an order or judgment of the Panel shall be taken in the manner and to the same extent as from orders or judgment in civil cases under Texas law.

### B. No clear agreement to expand judicial review

Denbury argues that both the FAA and TAA apply to the arbitration agreement, and that under the TAA the parties contracted to expand judicial review of the arbitration award for reversible error under standards applicable in a conventional appeal from a final judgment rendered after trial. Venoco contends the arbitration agreement's express language demonstrates that (1) only the FAA applies; and (2) judicial review is permitted only for complaints that the arbitration award was procured by fraud or corruption.

■ In *Hall Street Associates*, the United States Supreme Court considered the text of the FAA and held that sections 10 and 11[3] provide the exclusive grounds for judicial review. 552 U.S. at 584, 128 S.Ct. 1396. Therefore, parties to an arbitration agreement governed by the FAA but not by the TAA may not contractually supplement the statutory bases for vacatur expressly detailed in the statute to expand judicial review. *See id.* at 586–88, 128 S.Ct. 1396; *Nafta Traders*, 339 S.W.3d at 97–98, 101 & n.64.

■ In *Nafta Traders*, however, the Texas Supreme Court considered the analogous sections of the TAA, sections 171.088 and 171.091,[4] and parted ways with the *Hall Street* Court. *Nafta Traders*, 339 S.W.3d at 93–95. In doing so, the *Nafta Traders* Court especially noted that Texas law recognizes and broadly protects freedom of contract. *Id.* at 95. The *Nafta Traders* Court concluded that, as to arbitration agreements to which only the TAA applies or to which both the TAA and FAA apply, parties may contract for expanded court review of the arbitration award by agreeing that the arbitrators do not have the power or authority to reach a decision based on reversible error. *See id.* at 91–101 & n.64. In this situation, parties may obtain such review by seeking to vacate the arbitration award on the ground that the arbitrators exceeded their powers by reaching a decision based on reversible error. *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.088(a)(3)(A); *Nafta Traders*, 339 S.W.3d at 91–98. The *Nafta Traders* Court also indicated an express agreement by the parties that courts may not render judgment on an arbitration award based on reversible error might be deemed an indirect limit on the arbitrators' power or authority and therefore allow for review of reversible error based on an application seeking to vacate the arbitration award on the ground that the arbitrators exceeded their powers. *See* 339 S.W.3d at 91, 92, 95. The Court held that "the TAA presents no impediment to an agreement that limits the authority of an arbitrator in deciding a matter and thus allows for judicial review of an arbitration award for reversible error." *Id.* at 97. "But absent clear agreement, the default under the TAA, and the only course permitted by the FAA, is restricted judicial review." *Id.* at 101.

Recently, the Supreme Court of Texas in *Hoskins* held that, under the TAA, a

---

**3.** 9 U.S.C. § 11 (listing grounds for modification or correction of awards).

**4.** Tex. Civ. Prac. & Rem. Code Ann. § 171.091(a) (listing grounds for modification or correction of awards).

party may obtain vacatur of an arbitration award only by demonstrating a ground expressly listed in section 171.088(a); these statutory vacatur grounds do not include the "manifest disregard of the law" standard developed in common law. 497 S.W.3d at 494 ("[T]he TAA leaves no room for courts to expand on those grounds."). The *Hoskins* Court did not find any conflict with *Nafta Traders* because there the parties' agreement contained a clear restriction on the arbitrator's authority to issue a decision containing reversible error and the *Nafta Traders* Court allowed expanded court review of the arbitration award only to the extent a party sought vacatur of the award based on the statutory ground that the arbitrators exceeded their powers. *Hoskins*, 497 S.W.3d at 494–95; *Nafta Traders*, 339 S.W.3d at 91 (parties agreed that arbitrator "does not have authority ... to render a decision which contains a reversible error of state or federal law" and appellant contended arbitrator exceeded his powers).

If Venoco and Denbury agreed that the FAA governs their arbitration agreement, then the FAA, not the TAA, would apply. *See Nafta Traders*, 339 S.W.3d at 97 & n.64 (concluding that FAA and TAA both may apply to arbitration agreement but that only one statute applies if parties choose one of the statutes in their agreement); *In re Choice Homes, Inc.*, 174 S.W.3d 408, 412 (Tex. App.–Houston [14th Dist.] 2005, orig. proceeding) (concluding FAA governs arbitration agreement if parties so agree). If the FAA applies and the TAA does not, the parties cannot obtain review of the arbitration award for reversible error under standards applicable in a conventional appeal from a final judgment rendered after trial. *See Hall Street*, 552 U.S. at 592, 128 S.Ct. 1396; *Nafta Traders*, 339 S.W.3d at 91. Denbury and Venoco agreed that *"[e]xcept to the extent inconsistent with the provisions hereof,* the arbi-

tration shall be governed by the [FAA]; provided, however, that the arbitrators shall issue a joint, written decision which shall include a list of findings, with supporting evidentiary references, and reasons, upon which the arbitrators have relied in making their decision." (Emphasis added). We presume for the sake of argument that both the FAA and the TAA apply to the parties' arbitration agreement.

■ Even assuming that both statutes apply, however, the parties did not clearly agree to expand judicial review of the arbitration award. In arguing that the parties expanded judicial review, Denbury relies on the following statement in the agreement: "An appeal from an order or judgment of the Panel shall be taken in the manner and to the same extent as from orders or judgment in civil cases under Texas law." It is not clear what the parties intended by this sentence. The parties refer to the arbitration panel's "judgment"; but the arbitration panel issues an award—it does not render a judgment. *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.081 (providing that "[t]he making of an agreement described by Section 171.001 that provides for or authorizes an arbitration in this state and to which that section applies confers jurisdiction on the court to ... render judgment on an award under this chapter"); *id.* § 171.092 (providing that "[o]n granting an order that confirms, modifies, or corrects an award, the court shall enter a judgment or decree conforming to the order"). Though the parties refer to an "appeal" of the arbitration panel's "judgment," the legislature has not provided for an appeal from an arbitration award to a Texas court; instead, parties file an application to a court for confirmation, vacatur, modification, or correction of the award. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 171.081–171.098. The parties

appear to be agreeing as to the manner in which an appeal is taken to a court, which is a subject for the legislature. In fact, this provision of the parties' agreement is substantially similar to the language in section 171.098, "Appeals," of the TAA, except that the phrase "[a]n appeal from an order or judgment of the Panel" takes the place of an appeal from a court's judgment or decree under chapter 171 or from certain orders under this chapter. *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.098.

Whatever the exact meaning of this sentence, we reject Denbury's contention because the language upon which it relies does not clearly expand judicial review of an arbitration award to encompass reversible error under standards applicable in a conventional appeal from a final judgment rendered after trial.

Unlike the arbitration agreement at issue in *Nafta Traders*, subsection (h) of Exhibit "P" contains no statement, much less a "clear agreement," that expressly restricts the panel's authority to reach a decision based on reversible error. *See Forest Oil Corp. v. El Rucio Land & Cattle Co., Inc.*, 446 S.W.3d 58, 87 (Tex. App.–Houston [1st Dist.] 2014, pet. denied) ("Conspicuously absent from the arbitration provision is the language present in *Nafta Traders*, stating that the arbitrator was without authority to render a decision containing a reversible error of law." (citing *Nafta Traders*, 339 S.W.3d at 101)).[5] Nor do the parties expressly agree that

courts may not render judgment on an arbitration award based on reversible error. *See Nafta Traders*, 339 S.W.3d at 91, 92, 95.

## C. Limiting vacatur grounds to fraud and corruption

Instead of contractually expanding the scope of judicial review, the parties expressly agreed in the arbitration agreement to restrict the available grounds for vacatur to only fraud and corruption: "The final decision of the arbitrators shall be binding and non-appealable, except as provided herein. . . . The parties agree that an award made by the Panel may be vacated by a court only if the award has been procured by or through fraud, or corruption." Neither the FAA or *Hall Street*, nor the TAA, *Nafta Traders*, or *Hoskins* explicitly addresses, much less forecloses, the ability of sophisticated parties to exercise their freedom of contract to further narrow review to a subset of the statutory grounds for vacatur.[6] There is no dispute that Denbury did not raise fraud or corruption as a ground for vacating the panel's award.

## D. Exceeding authority under the FAA or the TAA

Even assuming that the parties' agreement to limit the available grounds for vacatur to instances of fraud or corruption were not enforceable, Denbury has not met its heavy burden to demonstrate un-

---

5. Despite Denbury's attempt at oral argument to invoke common law, in the district court Denbury alleged jurisdiction pursuant to and application of the TAA. Nor did Denbury allege (and the arbitration agreement does not otherwise reflect) a type of claim or agreement excluded under the TAA. *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.002(a).

6. In the context of an appeal from a final judgment of disbarment, we have indicated that public policy does not prohibit enforcing

a parties' waiver of the statutory right to appeal a trial court's judgment confirming an arbitration award altogether. *See Bennett v. Comm'n for Lawyer Discipline*, 489 S.W.3d 58, 69–70 & n.1 (Tex. App.–Houston [14th Dist.] 2016, no pet.) (rejecting interpretation that reference to TAA in agreement incorporated section 171.098(a)(3) where agreement plainly stated arbitration was "binding, conclusive and non-appealable").

der either the FAA or the TAA that the panel exceeded its authority by its award. *See* 9 U.S.C. § 10(a)(4); Tex. Civ. Prac. & Rem. Code Ann. § 171.088(a)(3)(A); *Oxford Health Plans LLC v. Sutter*, — U.S. ——, 133 S.Ct. 2064, 2070, 186 L.Ed.2d 113 (2013) (FAA); *Barton v. Fashion Glass & Mirror, Ltd.*, 321 S.W.3d 641, 646 (Tex. App.–Houston [14th Dist.] 2010, no pet.) ("There is a presumption that the arbitrator's actions were within his authority, and we resolve all doubts in favor of the award." (TAA)).

The instant arbitration agreement states that the parties "agree that any and all claims and/or controversies arising between [the parties] which relate to and arise out of this [Option] Agreement shall be resolved in accordance with the . . . arbitration procedures set forth in Exhibit 'P.'" This language reflects a broad arbitration clause and evidences the parties' intent to be inclusive rather than exclusive. *Patel*, 2016 WL 4254016, at *5; *Branch Law Firm L.L.P. v. Osborn*, — S.W.3d ——, ——, 2016 WL 444867, at *12 (Tex. App.–Houston [14th Dist.] Feb. 4, 2016, pet. denied). There is no dispute that Venoco's declaratory-judgment claim relates to and arises out of the Option Agreement.

 "Because the parties bargained for the arbitrator's construction of their agreement, an arbitral decision even arguably construing or applying the contract must stand, regardless of a court's view of its (de)merits." *Oxford Health*, 133 S.Ct. at 2070 (internal quotation marks omitted). Section 10(a)(4) of the FAA "permits courts to vacate an arbitral decision only when the arbitrator strayed from his delegated task of interpreting a contract, not

when he performed that task poorly." *Id.*; *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010) ("It is not enough for petitioners to show that the [arbitration] panel committed an error—or even a serious error."). An arbitrator who exceeds his authority issues an award that simply reflects his own notions of economic justice instead of drawing its essence from the contract. *Oxford Health*, 133 S.Ct. at 2070.

 Similarly, under the TAA, an arbitrator exceeds his authority only "when he disregards the contract and dispenses his own idea of justice." *D.R. Horton–Tex.*, 423 S.W.3d at 534. Contentions that the arbitrator's reasoning was legally erroneous or internally inconsistent, or that the arbitrator misinterpreted the contract or misapplied the law do not provide a basis for vacating an award. *Patel*, 2016 WL 4254016, at *3, 5. Committing mistakes of fact or law is not a proper ground for vacating an award; instead, a party must show that the arbitrator decided a matter not properly before him at all. *Id.* at *3, 5–6; *D.R. Horton–Tex.*, 423 S.W.3d at 534.

 We first address, and overrule, Denbury's contention that the panel exceeded its authority because in its award it failed to provide "evidentiary references" based on specific record references, as provided in the parties' post-hearing briefs and proposed findings of fact and conclusions of law. The agreement required more than the panel's mere announcement of its decision—not just a "standard award."[7] The agreement required "a joint, written decision which shall include a list of findings, with supporting evidentiary refer-

---

7. Generally, under the FAA, "an arbitrator need not explain her decision; thus, in a typical arbitration where no specific form of award is requested, arbitrators may provide a 'standard award' and simply announce a re-

sult." *Cat Charter, LLC v. Schurtenberger*, 646 F.3d 836, 844 (11th Cir. 2011) (citing *United Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 598, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)).

ences and reasons, upon which the arbitrators have relied in making their decision."

Here, the panel issued a unanimous, 13-page written award, which provided almost four pages of background facts, including details of the parties' negotiation of the Option Agreement and the exact language of the "Co2 Costs" provision. The award contained the panel's findings with regard to the meaning of both "commodity costs" and "transportation costs," with five pages of analysis detailing reasons for its findings. The panel's arbitration award was not so irrational or devoid of authority that the panel was merely dispensing its own idea of justice. *See D.R. Horton–Tex.*, 423 S.W.3d at 536. We cannot conclude that the panel exceeded its powers based on the form of its award.[8]

■ Next, we consider whether "the panel exceeded its authority in determining that Denbury should be limited to a recovery that amortized only one-half the cost of the pipeline delivering $CO_2$ for Venoco's benefit." In its award, the panel found and declared:

[T]he most reasonable construction of [the transportation costs] provision that is consistent with the parties' intent expressed by their chosen language is that transportation costs (before and after payout) shall be calculated based on a fraction of the chargeable actual construction cost of the line from Donaldsonville[, Louisiana] to Hastings; and, the fraction of chargeable cost per mcf used in the calculation shall be ½ (400 divided by 800 MMcf[/]d) of the Green Pipeline's actual cost, amortized over a twenty (20) year period.

The panel further declared the formula to calculate the transportation fee.[9] The award reflects that the panel operated within its broad authority to construe the text of the "transportation costs" provision [10] and declare its findings.

Denbury assails the panel's decision to adopt the amortization formula as "advanced and explained by Venoco" rather than the formula based on Denbury's interpretation.[11] In other words, Denbury merely disputes the correctness of the panel's decision construing the "transpor-

---

**8.** Unlike in *Stage Stores, Inc. v. Gunnerson*, 477 S.W.3d 848, 863 (Tex. App.–Houston [1st Dist.] 2015, no pet.), where our sister court reversed the confirmation of an award on an employment agreement and remanded for the district court to request a determination by the arbitrator of one of the employer's key defenses that the award failed to identify and address, Denbury does not argue the panel failed to identify or address any key issue.

**9.** The panel provided the following formula:

$$12\% \times \frac{\$CapEx \times \dfrac{400}{800}}{1.12^{20} - 1} \times 1.12^{20} + \$OpEx \quad \Big/ \quad 400\ \text{MMcf/day} \times 365$$

**10.** *See* n.1.

**11.** Denbury's proposed formula is identical to that declared by the panel except the capital-expense figure is not halved but instead is reduced by $113 million.

tation costs" provision and reurges the merits of its case. In the absence of an agreement for expanded review of the arbitration award under the reasoning of the *Nafta Traders* Court, such a merits-based challenge is not a permissible ground for vacatur under the FAA or the TAA. *See, e.g., Eddleman v. Ocker*, No. 13-15-00217-CV, 2016 WL 1732428, at *7 (Tex. App.–Corpus Christi Apr. 28, 2016, no pet.) (mem. op.) (arguments attacking legal merits of arbitrator's decision "even if valid, do not constitute grounds to vacate or avoid confirmation of an arbitration award" (TAA)); *Thomas v. Cook*, 350 S.W.3d 382, 393 (Tex. App.–Houston [14th Dist.] 2011, pet. denied) (challenge to arbitrator's resolution as to the merits of parties' contractual dispute is not proper basis for vacatur (FAA)). Moreover, we already have determined that the parties did not clearly agree to expanded judicial review of the award for reversible error. Therefore, Denbury has not met its burden under the FAA or the TAA to show that the arbitration panel exceeded its powers by disregarding the Option Agreement and dispensing its own brand of justice.[12]

## III. CONCLUSION

Accordingly, we conclude that the district court did not err in confirming the arbitration panel's award. We affirm the district court's judgment.

---

12. Denbury relies on *City of Arlington v. Kovacs*, 508 S.W.3d 472, 478-80, 2015 WL 4776100, at *5-6 (Tex. App.–Fort Worth Aug. 13, 2015, pet. denied), where the Fort Worth court of appeals concluded that an arbitrator exceeded his authority under a municipal personnel manual where he improperly considered post-termination evidence in determining whether a former police officer violated the personnel rules as charged. Unlike in *Kovacs*, Denbury has not shown that the panel "improperly pursued an inquiry beyond the scope" of the Option Agreement. *See id.* at *6.