

# NUMBER 13-19-00365-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

VICTOR H. SANCHEZ AND
SM3 INVESTMENTS, LTD.,                                    Appellants,

v.

DOCTOR'S HOSPITAL AT RENAISSANCE,
LTD. AND RGV MED, LLC,                                    Appellees.

## On appeal from the 332nd District Court
## of Hidalgo County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Perkes[1]
Memorandum Opinion by Chief Justice Contreras**

---

[1] The Honorable Gregory T. Perkes, former Justice of this Court, did not participate in this decision because his term of office expired on December 31, 2020.

Following a dispute arising out of a partnership agreement, appellants, Victor H. Sanchez and SM3 Investments, Ltd. (SM3), initiated arbitration proceedings against appellees, Doctor's Hospital at Renaissance, Ltd. (DHR) and RGV Med, LLC (RGV) (collectively, the partnership). The claims were tried before a panel of three arbitrators. Ultimately, the panel found in favor of the partnership and found Sanchez and SM3 to be jointly and severally liable for the partnership's attorney's fees and expenses. Appellees subsequently sought to confirm the arbitration award in the district court. However, appellants requested that the court vacate the panel's award, arguing that the panel committed reversible error and that the parties contracted for "expanded judicial review" of the award. The trial court confirmed the arbitration award and entered final judgment in favor of appellees. By five issues, appellants seek to overturn the trial court's judgment and the panel's award.[2] We affirm.

## I. BACKGROUND

In 2001, Sanchez made investments and entered into various agreements with the partnership regarding operations of and certain real estate related activities of DHR. The controlling version of the agreements are the DHR, Fifth Amended and Restated Agreement of Limited Partnership (partnership agreement) and the RGV Fifth Amended and Restated Regulations (regulations), both dated December 30, 2013 (collectively, the agreements). RGV operated as the general partner of DHR while Sanchez—and

---

[2] Appellants' issues are summarized as follows: (1) the arbitration agreement that requires the panel to apply the internal laws of the State of Texas limited the panel's authority to render an award that is inconsistent with Texas law; (2) the trial court erred in confirming the arbitration award because the panel did not provide the reasoning behind the award; (3) the trial court erred in confirming the award because the panel committed reversible error by finding a breach of contract by appellees but failing to find in favor of and award damages to appellants; (4) the trial court erred in confirming the award because the panel exceeded its authority and committed reversible error by finding appellants jointly and severally liable for attorney's fees; and (5) the trial court erred in confirming the award because the panel violated appellants' due process rights by denying their motion to modify without hearing or reasoning.

subsequently SM3—was a limited partner. In 2003, the partnership added a requirement that the limited partners must reside in Hidalgo, Cameron, or Starr County, Texas. Failure to maintain the residence permitted the partnership to purchase the partnership interest from the limited partner.

In February 2012, Sanchez formed SM3. At the end of 2012, Sanchez, with the permission and assistance of the partnership, transferred his partnership interest to SM3. However, the partnership agreement required non-individual partners, such as SM3, to designate a sponsor. The sponsor of the non-individual partner was required to abide by the residency requirement. SM3 designated Sanchez as its sponsor. At the time, Sanchez was primarily residing in Hidalgo County, Texas, while his wife and two younger children moved to Bexar County, Texas, where Sanchez owned a second home.

In November 2014, the partnership sent a letter to Sanchez notifying him of the partnership's intent to purchase SM3's interest in the partnership, alleging Sanchez was in violation of the residency requirement. Sanchez and SM3 responded to the letter, disagreeing with the allegation and opposing a forced sale of the partnership interest. On December 11, 2014, Israel Rocha, then CEO of the partnership, sent Sanchez another letter stating the partnership was giving Sanchez notice that the partnership was exercising its right to purchase SM3's shares as a result of breaching the residency requirement. Attached to the letter was a check for $4,783,872.64, an amount calculated using the purchase price formula from the partnership agreement. However, Sanchez did not initially accept the check.

After some negotiation, Sanchez ultimately accepted the amount through a wire transfer and executed a repurchase assignment conveying SM3's interest back to the

3

partnership for the amount as calculated. The repurchase assignment did not contain a release of claims by either party. The assignment is dated December 17, 2014, but was not delivered to appellees until January 2015. The consideration for the shares was transferred by the partnership to SM3 on January 8, 2015.

Pursuant to arbitration clauses in the agreements, appellants filed a demand for arbitration on May 17, 2017. Appellants alleged, among other things, that appellees breached the partnership agreement by forcing appellants to sell the shares back to the partnership. Appellants further sought to set aside the assignment agreement under theories of fraud in the inducement, fraud, negligent misrepresentation, and unjust enrichment. Appellees asserted the affirmative defenses of estoppel, waiver, and laches. Appellees also challenged Sanchez's standing and raised a statute of limitations challenge to appellants' negligent misrepresentation claim. Both parties sought attorney's fees, costs, and expenses pursuant to the agreements.

The parties' dispute culminated in a four-day arbitration before a panel of three arbitrators. On December 17, 2018, the panel issued a final award in favor of appellees and ordered appellants jointly and severally liable for appellees' attorney's fees and costs in the amount of $435,880.21. The panel further awarded appellees $46,322.77 for fees and expenses in excess of the arbitration's apportioned costs. The panel's findings and reasonings were set forth in an eleven-page final award. The final award included a summary of the background facts, the parties' claims and defenses, and the panel's findings and decisions.

The panel found, in pertinent part, that Sanchez did not violate the residency requirement, and thus "the forced repurchase of the [s]ubject [u]nits was without sufficient

4

justification under the DHR and RGV [a]greements." However, the panel concluded that said breach by appellees did not determine the outcome of the proceeding. The panel determined that the repurchase agreement executed by Sanchez was the result of negotiation, that Sanchez was aware of his options to challenge the repurchase, and that "Sanchez repeatedly indicated his assent to the repurchase and cooperated with it . . . ." The panel determined that the repurchase assignment "constituted a subsequent enforceable agreement among the parties." The panel rejected appellants' arguments to set aside the repurchase assignment and further ruled in favor of appellees' challenge to Sanchez's standing.

On January 6, 2019, appellants timely filed a motion to modify or correct the award, asking the panel to clarify the justification for ruling against appellants, set aside the award and rule in favor of appellants, and modify the award of attorney's fees by segregating the fees owed by Sanchez and SM3 based on Sanchez's lack of standing. Appellees filed a response on January 16, 2019. The panel rejected appellants' request on January 17, 2019.

Appellees filed a motion to confirm the arbitration award on January 7, 2019. Conversely, appellants filed a motion to vacate the arbitration award. Appellants requested that the trial court review the arbitration award and find reversible error because the panel exceeded its power by ruling incorrectly. Appellants asserted that, through the agreements, the parties agreed to expanded judicial review of the panel's award. After considering the parties' respective motions, the court entered an order confirming the award and rendered a judgment in accordance with that award. This appeal followed.

## II.    STANDARD OF REVIEW

"Review of a trial court's decision as to vacatur or confirmation of an arbitration award is de novo and the appellate court reviews the entire record." *O'Grady v. Nat'l Union Fire Ins. Co. of Pittsburgh, P.A.*, 506 S.W.3d 121, 124–25 (Tex. App.—Corpus Christi–Edinburg 2016, pet. denied) (quoting *In re Guardianship of Cantu de Villarreal*, 330 S.W.3d 11, 17 (Tex. App.—Corpus Christi–Edinburg 2010, no pet.)). "However, all reasonable presumptions are indulged in favor of the award, and none against it." *Id.* (quoting *In re Chestnut Energy Partners, Inc.*, 300 S.W.3d 386, 397 (Tex. App.—Dallas 2009, pet. denied)). "Because Texas law favors arbitration, judicial review of an arbitration award is extraordinarily narrow." *Id.* (quoting *In re Cantu*, 330 S.W.3d at 17). "We give strong deference to the arbitrator with respect to issues properly left to the arbitrator's resolution." *Id.* at 124–25 (quoting *Age Indus., Ltd. v. Edwards*, 318 S.W.3d 461, 462 (Tex. App.—El Paso 2010, pet. dism'd)).

## III.    APPLICABLE LAW

The Texas Arbitration Act (TAA) governs arbitrations in Texas.[3] *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 171.001–.098. "A written agreement to arbitrate is valid and enforceable if the agreement is to arbitrate a controversy that . . . arises between the parties after the date of the agreement." *Id.*§ 171.001. "Unless grounds are offered for vacating, modifying, or correcting an award under [§§] 171.088 or 171.091, the court, on application of a party, shall confirm the award." *Id.* § 171.087. "[T]he court shall vacate an award if . . . the arbitrators exceeded their powers." *Id.* § 171.088(a)(3)(A). "[A]n arbitrator derives his power from the parties' agreement to submit to arbitration." *Nafta Traders, Inc.*

---

[3] The parties may agree to have the proceedings governed by the Federal Arbitration Act; however, that was not done in the present case and will not be discussed in this memorandum opinion.

*v. Quinn*, 339 S.W.3d 84, 90 (Tex. 2011) (quoting *City of Pasadena v. Smith*, 292 S.W.3d 14, 20 (Tex. 2009)). Generally, an arbitrator exceeds their power by deciding matters not before them, not just by deciding them incorrectly. *Forest Oil Corp. v. El Rucio Land & Cattle Co.*, 518 S.W.3d 422, 431 (Tex. 2017); *Denbury Onshore, LLC v. Texcal Energy S. Tex., L.P.*, 513 S.W.3d 511, 520 (Tex. App.—Houston [14th Dist.] 2016, no pet.) ("Committing mistakes of fact or law is not a proper ground for vacating an award; instead, a party must show that the arbitrator decided a matter not properly before him at all.").

The parties may agree to limit the arbitrator's power. *See Nafta Traders, Inc.*, 339 S.W.3d at 97 ("[W]e hold that the TAA presents no impediment to an agreement that limits the authority of an arbitrator in deciding a matter and thus allows for judicial review of an arbitration award for reversible error."). To do so, the parties must make a clear agreement to limit the arbitrator's power. *See Id.* at 101. By agreeing to limit an arbitrator's power to that of a judge, the parties also agree to expanded judicial review. *See id.* When parties agree to expanded judicial review, the parties are free to ask a court of competent jurisdiction to review the arbitrator's findings and rulings for reversible error. *Id.* However, "absent clear agreement, the default under the TAA . . . is restricted judicial review." *Id.*

In *Nafta Traders*, the arbitration clause stated: "The arbitrator does not have authority (i) to render a decision which contains a reversible error of state or federal law, or (ii) to apply a cause of action or remedy not expressly provided for under existing state or federal law." *Id.* at 88. The Supreme Court of Texas found that this language limited the arbitrator's authority to that of a judge. *Id.* at 101–02. However, "[a]n arbitration award is not susceptible to full judicial review merely because the parties have agreed." *Id.* at 101. "A court must have a sufficient record of the arbitral proceedings, and complaints

7

must have been preserved, all as if the award were a court judgment on appeal." *Id.* If the record of the arbitral proceedings is inadequate, then the award is not subject to enhanced judicial review, notwithstanding the parties' agreement to limit the arbitrator's authority. *See id.*

Multiple Texas courts of appeal have considered whether language requiring arbitrators to apply the laws of the State of Texas constitutes an agreement to limit the arbitrator's authority and thus agreed to expanded judicial review. *See, e.g.*, *Forest Oil Corp.*, 518 S.W.3d at 432; *see also Midani v. Smith*, No. 09-18-00009-CV, 2018 WL 5660571 (Tex. App.—Beaumont Nov. 1, 2018, pet. denied) (mem. op.); *Holmes Builders at Castle Hills, Ltd. v. Gordon*, No. 05-16-00887-CV, 2018 WL 1081635 (Tex. App.— Dallas Feb. 28, 2018, no pet.) (mem. op.). These courts have held that a clause requiring the application of Texas law does not equate to limiting the arbitrator's authority. *Forest Oil Corp.*, 518 S.W.3d at 432; *see also Midani*, 2018 WL 5660571, at *4; *Holmes Builders*, 2018 WL 1081635, at *4. Additionally, an arbitrator does not exceed its authority by failing to provide specific reasoning and evidentiary references despite an agreement that the arbitrator do so. *See Denbury Onshore*, 513 S.W.3d at 520–21 (holding that "[t]he panel's arbitration award was not so irrational or devoid of authority that the panel was merely dispensing its own idea of justice.")

### IV. Discussion

### A. Expanded or Restricted Judicial Review

By their first issue, appellants argue that the parties agreed to limit the panel's authority and thus agreed to expanded judicial review. Appellants specifically point to the following language of the arbitration clause:

The arbitrator(s) shall apply the internal laws of the State of Texas (without regard to conflict of law rules) in determining the substance of the dispute, controversy or claim and shall decide the same in accordance with the applicable usages and terms of the trade. . . . The arbitrator(s)' award shall be in writing and shall set forth the findings and conclusions upon which the arbitrator(s) based the award.[4]

According to appellants, the above language was in addition to a choice of law provision found in the agreements.[5] Appellants also note the clause's requirement that the panel's award "shall be in writing and shall set forth the findings and conclusions upon which the arbitrator(s) based the award" as evidence that the parties intended to limit the panel's authority.

Because the default standard under the TAA is restricted judicial review, the parties must have a *clear agreement* of their intent to permit expanded review. *Nafta Traders, Inc.*, 339 S.W.3d at 101 (emphasis added). Simply agreeing that the arbitrator is to apply the laws of the State of Texas does not amount to an agreement to limit the panel's authority. *See Forest Oil Corp.*, 518 S.W.3d at 432; *see also Midani*, 2018 WL 5660571, at *4; *Holmes Builders*, 2018 WL 1081635, at *4. Further, a requirement to set forth the panel's findings and conclusions in writing does not amount to an agreement for expanded judicial review. *See Denbury Onshore*, 513 S.W.3d at 520–21. In contrast to *Nafta Traders*, where the parties agreed to restrict the arbitrator from making reversible error, no such language or agreement exists in the present case. *Cf. Nafta Traders*, 339 S.W.3d at 101–02. The arbitration language before us does not constitute a "clear agreement" to limit the panel's authority. *See id.* In the absence of a clear agreement to

---

[4] The partnership agreement and the regulations both contain the same language.

[5] Paragraph 9.5 of the partnership agreement and paragraph 12.2 of the regulations state that the respective documents "shall be construed and enforced in accordance with the applicable laws of the state of Texas. . . ."

limit the arbitrator's authority and expand the scope of judicial review, this Court may not exercise expanded judicial review. *See Forest Oil Corp.*, 518 S.W.3d at 432. We therefore conclude that restricted judicial review will be applied, and as previously discussed, vacatur will be limited to the grounds expressly provided by the statute. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.088.

Appellants' first issue is overruled.

## B. The Panel Exceeded Its Authority

By their third and fourth issues, appellants assert that the trial court erred by confirming the award because the panel exceeded its authority by: (1) finding appellees breached the contract while simultaneously failing to award damages to appellants; and (2) confirming the award when the panel exceeded its authority by finding Sanchez and SM3 jointly and severally liable for attorney's fees. We apply restricted judicial review to each of appellants' issues.

Under restricted review, we determine whether the panel decided matters not before them, rather than whether it decided matters before them incorrectly. *Forest Oil Corp.*, 518 S.W.3d at 431; *Denbury Onshore*, 513 S.W.3d at 520. Neither party asserts that the panel did not have the authority to decide the claims before them. The parties agree that both agreements require the claims asserted to be tried to a panel of three arbitrators.[6] In applying restricted review, we determine only whether the panel had the authority to consider and decide the claims and defenses, not whether the panel did so

---

[6] The arbitration clauses state that "[a]ll disputes, controversies, or claims that may arise among the parties hereto . . . including, without limitation, any dispute, controversy, or claim arising out of this Agreement, or any other relevant document, or the breach, termination or invalidity thereof, shall be submitted to and determined by binding arbitration." The agreements further state that "[t]he prevailing party in any such arbitration shall be entitled to recover its reasonable attorneys' fees, costs and expenses incurred in connection with the arbitration."

10

correctly. *Forest Oil Corp.*, 518 S.W.3d at 431; *Denbury Onshore*, 513 S.W.3d at 520. We conclude that the panel did not exceed its authority in determining the claims and defenses set forth by the parties. TEX. CIV. PRAC. & REM. CODE ANN. § 171.088(a)(3)(A) *See Forest Oil Corp.*, 518 S.W.3d at 431. Appellants' third issue is overruled.

Appellants further assert that the panel exceeded its authority by finding Sanchez and SM3 jointly and severally liable for appellees' attorney's fees. Specifically, appellants argue that based on the panel's finding that Sanchez did not have standing to assert any claims under the agreement, he should only be responsible for a segregated amount of fees. However, in applying restricted review, we determine only whether the panel had the authority to award attorney's fees, not whether the panel did so correctly. *See Forest Oil Corp.*, 518 S.W.3d at 431; *Denbury Onshore*, 513 S.W.3d at 520. Because the agreements both state "[t]he prevailing party in any such arbitration shall be entitled to recover its reasonable attorneys' fees, costs and expenses incurred in connection with the arbitration[,]" the panel had the clear authority to award attorney's fees. As such, we find that the panel did not exceed its authority in finding Sanchez and SM3 jointly and severally liable for appellees' attorney's fees. TEX. CIV. PRAC. & REM. CODE ANN. § 171.088(a)(3)(A) *See Forest Oil Corp.*, 518 S.W.3d at 431. Appellants' fourth issue is overruled.

## C.    Failure to Set Forth Findings and Conclusions

By their second issue, appellants assert that the trial court erred by confirming the award when the panel's written decision failed to articulate the reasoning behind finding in favor of appellees. Appellants point to the panel's finding that "the forced repurchase of the [s]ubject [u]nits was without sufficient justification," but "[the] conclusion of breach

11

is not outcome determinative." However, "[c]ontentions that the arbitrator's reasoning was legally erroneous or internally inconsistent, or that the arbitrator misinterpreted the contract or misapplied the law do not provide a basis for vacating an award." *Denbury Onshore*, 513 S.W.3d at 520. In any event, we conclude that the panel sufficiently set forth the findings and conclusions on which the panel based the award. It is clear from its final award that the panel found that "[the] [r]epurchase [a]greement, and the related tender of the [s]ubject [u]nits in exchange for the increased distributions, constituted a subsequent enforceable agreement among the parties." The panel considered each of appellants' arguments to set aside the assignment and rejected each argument. Accordingly, appellants' second issue is overruled.

## D. Due Process

By their fifth and final issue, appellants assert that the trial court erred by confirming the award because the panel violated appellants' due process rights when it summarily denied their motion to modify without a hearing or explanation.

Parties to an arbitration are generally entitled to due process. *See Brozo v. Shearson Lehman Hutton, Inc.*, 865 S.W.2d 509 (Tex. App.—Corpus Christi–Edinburg 1993, no writ); *see also Ewing v. Act Catastrophe–Tex. L.C.,* 375 S.W.3d 545, 551 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (citing *Bernstein Seawell & Kove v. Bosarge,* 813 F.2d 726, 729 (5th Cir.1987)). However, appellants provide no caselaw in support of their assertion that the panel's decision without hearing or explanation constitutes a violation of due process. The parties agreed that "arbitration shall be conducted pursuant to the Commercial Arbitration Rules then in effect of the American Arbitration Association[.]" Commercial Arbitration Rule R-50 neither requires a hearing on

a motion to modify or correct an award, nor does it require the panel to issue an explanation of its ruling.[7] Am. Arb. Ass'n, Com. Arb. Rules & Mediation Proc., R-50: Modification of Award (eff. Oct. 1, 2013), *available at* https://www.adr.org/sites/default/files/CommercialRules_Web.pdf. Further, the rule states that "[t]he arbitrator is not empowered to redetermine the merits of any claim already decided." *Id.* Thus, even assuming constitutional due process required the arbitrators to act according to the rules, the panel did not violate the due process rights of appellants. Accordingly, appellants' fifth issue is overruled.

## V.   CONCLUSION

The trial court's judgment is affirmed.

DORI CONTRERAS
Chief Justice

Delivered and filed on the
21st day of January, 2021.

---

[7] In pertinent part, the rule states: "The arbitrator shall dispose of the request [to correct the award] within 20 calendar days after transmittal by the AAA to the arbitrator of the request and any response thereto." Am. Arbitration Ass'n, Com. Arbitration Rules & Mediation Procedures, R-50: Modification of Award (eff. Oct. 1, 2013), *available at* https://www.adr.org/sites/default/files/CommercialRules_Web.pdf.