**Motion to Dismiss Denied; Affirmed and Majority and Dissenting Opinions filed November 7, 2019.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-17-00739-CV

---

## CENTER ROSE PARTNERS, LTD., INDIVIDUALLY AND DERIVATIVELY AS A MEMBER OF ROSE ACQUISITION LLC, DAVID FELT, NICOLE FELT, AND LLOYD HALL, Appellants

### V.

## JERRY W. BAILEY AND DAVID SONNIER, Appellees

---

**On Appeal from the 61st District Court
Harris County, Texas
Trial Court Cause No. 2014-32793**

---

## M A J O R I T Y   O P I N I O N

In this case involving appeals from a judgment rendered on an arbitration award, the appellees move to dismiss on the grounds that (1) one of the appellants lacks standing to appeal; (2) another appellant is estopped from challenging the trial court's judgment on appeal; and (3) all appellants waived their right to appeal the judgment. We deny the appellees' motion to dismiss.

On the merits of the appeals, we conclude that appellant Lloyd Hall did not challenge the arbitration award in a timely manner and that appellants Center Rose Partners, Ltd., Individually and Derivatively as a Member of Rose Acquisition, LLC, David Felt, and Nicole Felt have not shown that the trial court erred in denying their applications to vacate the arbitration award. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant/plaintiff Center Rose Partners, Ltd., ("Center Rose Partners") appellees/defendants Jerry W. Bailey and David Sonnier (collectively the "Bailey Parties"), and appellant/defendant Lloyd Hall are members of Rose Acquisition, LLC ("Rose Acquisition"), a Texas limited liability company. In Rose Acquisition's Articles of Organization, Bailey and L.J. Black are named as Rose Acquisition's managers. According to the Bailey Parties, Black stopped performing his job responsibilities and by 2007, several Rose Acquisition members had become unhappy with Black's behavior. In 2008, Center Rose Partners purchased Black's 330 units in Rose Acquisition. To finance this purchase, Center Rose Partners obtained a $2,650,000 loan from Capital One, N.A. (the "Loan"). Center Rose Partners signed a Promissory Note in favor of the bank (the "Note"). After Center Rose Partners's purchase of Black's interest in Rose Acquisition, Bailey became the sole manager of Rose Acquisition. The Bailey Parties claimed that Center Rose Partners and David Felt promised that Center Rose Partners would pledge 100 of the units it bought from Black to Bailey as an added inducement for Bailey to remain with Rose Acquisition. According to the Bailey Parties, Center Rose Partners promised that if Rose Acquisition allowed Center Rose Partners to receive 55% of the distributions to Rose Acquisition members (even though Center Rose Partners owned only a 45% interest in Rose Acquisition), Center Rose Partners would use the distributions received from Rose

2

Acquisition to pay off the Loan. The Bailey Parties later discovered that Center Rose Partners had defaulted on the Loan, and Bailey purchased the Loan from Capital One, N.A. to avoid a possible foreclosure by Capital One on assets of Rose Acquisition that had been pledged as collateral for the Loan.

In 2014, appellant/plaintiff Center Rose Partners, Ltd., a Texas limited partnership, Individually and Derivatively as a Member of Rose Acquisition, LLC ("Center Rose")[1] filed suit in the trial court below against Bailey, Sonnier, and Hall, asserting various claims relating to Bailey's management of Rose Acquisition. Center Rose sought various declarations under the Texas Declaratory Judgments Act and also asserted breach-of-contract, breach-of-fiduciary-duty, and quantum-meruit claims against Bailey. Center Rose also demanded an accounting and asked the trial court to impose a constructive trust.

In 2015, Bailey filed a separate lawsuit against Center Rose Partners and Nicole Felt seeking to recover the amount Center Rose Partners owed under the Note and against Nicole Felt as a guarantor.

In the trial court below, after Bailey, Sonnier, and Hall answered, the Bailey Parties filed a motion to compel arbitration of Center Rose's claims based on an arbitration provision contained in the Membership Agreement, executed in 1999 by all of the parties who were then members of Rose Acquisition. Under the Membership Agreement, the parties agreed that if they were unable to resolve "any dispute or controversy arising out of this [Membership Agreement], then any such dispute or controversy shall be settled by arbitration in Houston, Texas by a panel of three arbitrators in accordance with the rules of the American Arbitration

---

[1] In this opinion, we use the defined term "Center Rose Partners" to refer to Center Rose Partners, Ltd., and we use the defined term "Center Rose" to refer to Center Rose Partners, Ltd., a Texas limited partnership, Individually and Derivatively as a Member of Rose Acquisition, LLC.

3

Association, whose decisions shall be final, binding[,] and non-appealable." The Bailey Parties asserted that all of Center Rose's claims fell within the scope of this arbitration provision.

The trial court granted the motion to compel arbitration, ordered Center Rose, the Bailey Parties, and Hall to submit their dispute to arbitration in accordance with the Membership Agreement's arbitration provision, and stayed the case pending completion of the arbitration.

The Bailey Parties, individually and derivatively as members of Rose Acquisition, filed a demand for arbitration with the American Arbitration Association ("AAA") asserting claims for fraud, breach of fiduciary duty, conversion, and unjust enrichment against Center Rose Partners, David Felt, and Nicole Felt. The Bailey Parties alleged that the Felts were agents of Center Rose Partners. The Bailey Parties also sought declaratory relief and the imposition of a constructive trust. Though the trial court had compelled arbitration under the Membership Agreement's arbitration provision, the Bailey Parties did not base their arbitration demand on that provision. Instead, the Bailey Parties sought arbitration under section 11.15 of Rose Acquisition's Regulations. Under that provision, if the parties were unable to resolve "any dispute or controversy arising out of these Regulations, then any such dispute or controversy shall be settled by arbitration in Houston, Texas by a panel of three arbitrators in accordance with the rules of the [AAA], whose decisions shall be final, binding[,] and non-appealable."

In the arbitration, Center Rose Partners and the Felts filed an answer and claims for affirmative relief, in which they submitted to "the jurisdiction of the arbitration proceedings for those matters that are required to be arbitrated." They sought all of the relief Center Rose sought in the lawsuit and requested additional declaratory relief. Though Hall was a defendant in Center Rose's lawsuit, Hall did

4

not file any claims in the arbitration, and no claimant in the arbitration named Hall as a respondent.

The arbitration panel based the arbitration on the arbitration provision contained in section 11.15 of Rose Acquisition's Regulations. In January 2017, the arbitration panel issued a unanimous award. Two months later the arbitrators issued an amended award (the "Award") to correct typographical errors in the original award. In the Award, the arbitration panel made findings, including the following:

- The parties failed to adhere to the governance sections of the Articles of Organization of Rose Acquisition, the Membership Agreement, and the Regulations of Rose Acquisition, LLC.

- On July 2, 2008, Center Rose Partners entered into a Letter Agreement with Capital One Bank to borrow $2,650,000 to be used to purchase the 330 units[2] of "Buzz" Black in Rose Acquisition.

- Capital One and Center Rose Partners entered into the Note and a Deed of Trust and Security Agreement for the $2,650,000 secured by .9147 acres on Center Street.

- The Note was to be paid from distributions allocated to Center Rose Partners for the 330 units.

- Pursuant to a Trust Agreement, 100 units of the 330 units were held in trust for Bailey.

- During the approximately sixty months that Center Rose Partners was paying on the Note, it received approximately $2,315,005 in distributions attributed to the 330 units in Rose Acquisition.

- Center Rose Partners failed to introduce any documentary evidence to support its contention that it paid income taxes at a rate of 33% on the distributions received attributable to the 330 units.

---

[2] Though the arbitration panel sometimes used the term "shares" instead of "units," reading these terms in context, it is clear that the panel was referring to units in Rose Acquisition when using the term "shares." Therefore, we use the term "units" throughout this opinion.

- Though Bailey received several salary increases without the appropriate vote of the members, the members acquiesced to these raises.

- Center Rose Partners defaulted on the Note. Bailey purchased the Note from Capital One for approximately $1,241,966.69.

- The misconduct of the Bailey Parties, Center Rose Partners, David Felt, and Nicole Felt "was neither 'intentional' nor a 'knowing violation of the law.'"

The arbitration panel determined that Center Rose Partners breached its agreement to pay Capital One the entire $2,650,000 and that this breach caused a default on the Note. The arbitration panel also concluded that Center Rose Partners held the 330 units it purchased from Black in "a special trust for Rose Acquisition members." The arbitration panel granted the following relief in the Award:

- Bailey is entitled to receive the 100 units held in trust under the Trust Agreement.

- Because Center Rose Partners breached its agreement to pay Capital One the entire $2,650,000, and to prevent unjust enrichment, the remaining 230 units shall be held in a constructive trust for the benefit of Rose Acquisition.

- If Rose Acquisition chooses to sell the 230 units held in constructive trust, Rose Acquisition and the members must adhere to the Agreement Restricting Transfer of Units ("Restriction Agreement") in determining the value of the units and the selection of an appraiser under section 2 of the Restriction Agreement. Center Rose Partners is not entitled to receive any of the 230 units except through this procedure.

- Center Rose Partners shall reimburse Bailey $1,241,966.69 — the amount the arbitrators found that Bailey had paid to purchase the Note from Capital One.

The arbitration panel made the Award in full settlement of all claims and counterclaims submitted in the arbitration, stating that the panel denied all claims not expressly granted in the Award.

The Bailey Parties filed a motion to confirm the Award under section 171.087 of the Texas Civil Practice and Remedies Code. They asked the trial court

to confirm the Award and to render judgment on the Award under section 171.092 of the Texas Civil Practice and Remedies Code. Center Rose opposed this motion and filed an application to vacate the Award based on several vacatur grounds in section 171.088 of the Texas Civil Practice and Remedies Code. The Felts filed a plea in intervention in the lawsuit and filed an application to vacate the Award under the same statute.

The Bailey Parties filed a motion to strike the Felts' plea in intervention and application to vacate the Award. The trial court did not rule on their motion, and the Bailey Parties later withdrew the motion after the trial court rendered final judgment. The trial court denied Center Rose's application to vacate the Award and granted the Bailey Parties' motion to confirm the Award. The trial court rendered a final judgment on the Award and ruled that the Felts and Center Rose Partners take nothing as to each counterclaim that they asserted or could have asserted in the arbitration.

Hall filed a motion for new trial, asserting that the Award violated Hall's rights in various ways. In the motion Hall requested that the trial court set aside the judgment, grant Center Rose's application to vacate the Award, and order the parties to the arbitration to arbitrate again the claims arising under the Regulations. The trial court denied Hall's motion.

The trial court also denied Center Rose's motion for new trial, Center Rose's motion to reconsider the denial of its application to vacate the Award, and the Felts' motion to modify the judgment.

Center Rose, the Felts, and Hall all timely appealed.

## II. ISSUES AND ANALYSIS

### A. Should this court grant the Bailey Parties' motion to dismiss?

The Bailey Parties have filed a motion to dismiss the appeals of Center

7

Rose, the Felts, and Hall. The Bailey Parties note that in the Regulations' arbitration provision and in the Membership Agreement's arbitration provision, the parties agreed that the arbitrators' decisions shall be "final, binding[,] and non-appealable." The Bailey Parties maintain that this agreement constitutes an express waiver of the right to appeal the trial court's judgment and that each appellant either agreed to this waiver or is bound by it. The Bailey Parties also assert that Center Rose is estopped from pursuing this appeal because Center Rose voluntarily accepted the benefits of the trial court's judgment by accepting a $25,600 payment from Rose Acquisition to reimburse Center Rose for its attorney's fees, as ordered in the judgment. The Bailey Parties assert that this court should dismiss Hall's appeal because he lacks standing to appeal the trial court's judgment due to his failure to timely assert a ground for vacating the Award. We address each argument in turn.

### 1. *Alleged Waiver of Right to Appeal*

Although parties cannot change by agreement the statutes governing appellate jurisdiction, parties may waive by express agreement their right to appeal under those statutes. *See Emerson v. Emerson*, 559 S.W.3d 727, 734 (Tex. App.—Houston [14th Dist.] 2018, no pet.). In the Regulations's arbitration provision and in the Membership Agreement's arbitration provision, the parties agreed that the arbitrators' decisions shall be "final, binding[,] and non-appealable" (the "Non-Appealable Language"). The Bailey Parties maintain that the Non-Appealable Language constitutes an express agreement to waive the right to appeal the trial court's judgment and that each appellant either agreed to this waiver or is bound by it. We presume, without deciding, that each appellant either agreed to the Non-Appealable Language or is bound by it and that agreeing to the Non-Appealable Language does not violate Texas public policy.

8

We now address whether the Non-Appealable Language amounts to an express agreement to waive the right to appeal the trial court's judgment. The parties have not cited, and research has not revealed, any opinion from the Supreme Court of Texas interpreting this language. The Bailey Parties assert that two opinions from the Fourteenth Court of Appeals bind this panel to the Bailey Parties' interpretation of the Non-Appealable Language.

### a. The *Denbury* Case

In the first case — *Denbury Onshore, LLC v. Texcal Energy South Texas, L.P.* — this court held that the parties did not clearly agree to expand judicial review of the arbitration award. *See* 513 S.W.3d 511, 517–19 (Tex. App.—Houston [14th Dist.] 2016, no pet.). The *Denbury* court presumed that the parties' agreement to limit the available grounds for vacatur of the arbitration award to instances of fraud or corruption was not enforceable, and the court then concluded that the appellant had not met its heavy burden to demonstrate that the arbitrators exceeded their powers. *See id.* at 519–22. In a footnote, the *Denbury* court stated that, "[i]n the context of an appeal from a final judgment of disbarment, we have indicated that public policy does not prohibit enforcing a parties' [sic] waiver of the statutory right to appeal a trial court's judgment confirming an arbitration award altogether." *See id.* at 519, n.6. In *Denbury*, no party asserted that appellant had waived its right to appeal the trial court's judgment confirming the arbitration award, and this court did not address this waiver issue. *See id.* at 515–22. The *Denbury* case is not on point and is not a binding precedent as to how to construe the Non-Appealable Language. *See id.*

### b. The *Bennett* Case

The Bailey Parties also rely on *Bennett v. Commission for Lawyer Discipline*, a case in which an attorney appealing a disbarment judgment argued

that he did not violate Rule 3.02 of the Texas Disciplinary Rules of Professional Conduct when he appealed a district court's judgment confirming an arbitration award in favor of his former client because the appeal was permitted under the agreement between the attorney and the former client. *See* 489 S.W.3d 58, 68 (Tex. App.—Houston [14th Dist.] 2016, no pet.). In Bennett's appeal from this judgment, the First Court of Appeals affirmed on the merits and did not dismiss the appeal because the parties had waived any appeal from the judgment. *Id*. at 64–65. In adjudicating the appeal in the attorney-disciplinary proceeding, this court concluded that, under the plain language of the attorney/client agreement, the parties agreed to waive the right to appeal from any trial court's judgment confirming an arbitration award. *Id*. at 68–70.

But the *Bennett* court limited its analysis to the particular contract at issue in that case, stating as follows: "Bennett argues that the right to appeal has not been waived in this particular contract. We address only the particular contractual language presented here." *Id*. at 69 n.1. In *Bennett*, the attorney and client agreed to arbitrate any dispute between them under the rules of the Houston Bar Association Fee Dispute Committee. *Id*. at 63. Bennett and his client agreed "that the arbitrator's decision in any such arbitration shall be binding, conclusive[,] and non-appealable pursuant to the Rules and Regulations of the Houston Bar Association Fee Dispute Committee." *Id*. at 69. The agreement also provided "that arbitration may result in the client's waiver of significant rights, such as . . . the loss of the right to appeal." *Id*. The contractual language in *Bennett* differed materially from the Non-Appealable Language at issue today because the parties in today's case did not agree that the award would be "non-appealable pursuant to the Rules and Regulations of the Houston Bar Association Fee Dispute Committee." The agreement in the *Bennett* case was an attorney/client contract, and the *Bennett*

court emphasized that fact, stating that "Bennett's construction is not reasonable because a lawyer has a duty to inform a client of all material facts." *Id*. at 70. We conclude that the *Bennett* opinion is not on point and does not govern our interpretation of the Non-Appealable Language. *See id*. at 68–70. The interpretation of this language appears to be an issue of first impression in this court.

### c.      The "final, binding" language

The parties agreed that the arbitrators' decisions are binding. Parties may agree to binding arbitration. Or, parties may agree to non-binding arbitration, in which the arbitration award does not bind the parties but serves as a basis for the parties' further settlement negotiations. *See* Tex. Civ. Prac. & Rem. Code Ann. § 154.027 (West 2019); *G.T. Lech Builders, LLC v. Sapphire V.P., L.P.*, 458 S.W.3d 502, 508 n.1 (Tex. 2015). Thus, by agreeing that the arbitrators' decisions are binding, the parties manifested their choice for binding arbitration as opposed to non-binding arbitration. *See* Tex. Civ. Prac. & Rem. Code Ann. § 154.027; *G.T. Lech Builders, LLC*, 458 S.W.3d at 508 n.1. Under the plain meaning of the parties' language, their agreement that the arbitrators' decisions are final and binding does not constitute an express agreement to waive the right to appeal a judgment rendered on the arbitrators' award. *See Dean v. Sullivan*, 118 F.3d 1170, 1171 (7th Cir. 1997); *Iran Aircraft Indus. v. Avco Corp.*, 980 F.2d 141, 145 (2d Cir. 1992); *Circle Zebra Fabricators, Ltd. v. Americas Welding Corp.*, No. 13-10-00504-CV, 2011 WL 1844443, at *6 (Tex. App.—Corpus Christi Mar. 17, 2011, no pet.) (mem. op.).

### d.      The "non-appealable" term

Parties enjoy the contractual freedom to make express agreements to waive their right to appeal a judgment rendered on an arbitration award, but because this

11

right is a valuable one, we must make sure that the appellants are bound by an express agreement to waive this right before we dismiss an appeal from this type of judgment. *See Perry Homes*, 258 S.W.3d at 585–87, 601; *Emerson*, 559 S.W.3d at 734.

As to the agreement that the arbitrators' decisions are non-appealable, we deem it significant that the parties agreed that the arbitrators' decisions are non-appealable; the parties did not agree that any judgment rendered on a decision of the arbitrators would be non-appealable. Thus, to use today's case as an example, the parties agreed that the Award would be non-appealable, not that the trial court's judgment on the Award would be non-appealable. If the parties had agreed that any judgment rendered on a decision of the arbitrators would be non-appealable, that provision would constitute an express agreement to waive the right to appeal the trial court's judgment in this case. *See, e.g., MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 827–30 (10th Cir. 2005) (holding that parties agreed to waive right to appeal judgment rendered on any arbitration award by agreeing that "[j]udgment upon the award rendered by the arbitrator shall be final and nonappealable"). But, the parties did not enter into such an agreement.

In addition, when a party appeals a judgment rendered on an arbitration award, the party is not limited to challenging the denial of any application to vacate, modify, or correct the award. *See Perry Homes v. Cull*, 258 S.W.3d 580, 585–87, 601 (Tex. 2008). The appealing party also may challenge any interlocutory order that merged into the trial court's final judgment, such as an order granting an opposing party's motion to compel arbitration. *See id*. (holding that appellate courts may review trial-court orders compelling arbitration on appeal from a final judgment rendered on an arbitration award); *Ewing v. Act Catastrophe–Texas L.C.*, 375 S.W.3d 545, 552–53 (Tex. App.–Houston [14th

Dist.] 2012, pet. denied) (noting that no party had moved to compel or stay arbitration and that there was no order as to such relief that could be reviewed on appeal of a final judgment rendered on an arbitration award).

Though it may not be common for parties to agree to appellate arbitration, certain arbitration organizations, including the AAA,[3] provide appeal tribunals of appellate arbitrators for review of the merits of an arbitration award if the parties have agreed that the arbitration award may be appealed. *See Carter v. ZB, National Association*, 578 S.W.3d 613, 620 (Tex. App.—Houston [14th Dist.] 2019, no pet.). The Bailey Parties have submitted a copy of the AAA's "Optional Appellate Arbitration Rules" ("Appellate Rules"). They argue that this court should not consider the availability of an appeal from an arbitration award because the AAA promulgated the Appellate Rules effective as of November 2013, yet the Regulations and the Membership Agreement were effective as of September 1999. The Bailey Parties assert that there was no way to appeal an arbitration award before the AAA until the Appellate Rules took effect in November 2013. Presuming for the sake of argument that we must base our construction of the arbitration provisions on the facts as of September 1999, the Bailey Parties incorrectly presume that the absence of the Appellate Rules before November 2013 means that parties could not appeal an award issued in a AAA arbitration before that point in time.

The introduction to the Appellate Rules states that appellate arbitration has been available before the AAA for some years before 2013 and that the AAA has provided sample clauses for appellate arbitration in its "Drafting Dispute Resolution Clauses — A Practical Guide." The AAA states that although parties

---

[3] In the Regulations's arbitration provision and in the Membership Agreement's arbitration provision, the parties agreed to arbitration before the AAA.

have been crafting their own procedures and standards for appellate arbitration in their arbitration agreements, the AAA adopted the Appellate Rules to provide for an easier, more standardized process. The AAA's 1993 guide for drafting dispute-resolution clauses provided a sample clause for parties who wanted to agree to appellate arbitration. *See* American Arbitration Association, Drafting Dispute Resolution Clauses: A Practical Guide (1993), available in Westlaw file No. 1993 WL 495383. These provisions show that appellate arbitration before the AAA was available when the parties agreed to the arbitration provisions in the Regulations and Membership Agreement. *See id*. Thus, the parties might have agreed that an arbitration decision shall be "non-appealable" to confirm that they were not agreeing to appellate arbitration. *See Carter*, 578 S.W.3d at 620.

In addition, appeals ordinarily involve a review of the merits of the appealed decision. Though an application to vacate, modify, or correct an arbitration award in a trial court is not actually an appeal, in these applications parties improperly may seek a review by the trial court of the legal or factual determinations of the arbitrators as if the application were an appeal. *See Casa Del Mar Assoc., Inc. v. Williams & Thomas, L.P.*, 476 S.W.3d 96, 101 (Tex. App.—Houston [14th Dist.] 2015, no pet.). Unless the parties have agreed to expanded judicial review of an arbitration award enforceable under the Texas Arbitration Act,[4] judicial review of an arbitration award is extraordinarily narrow and does not encompass a review of the award's merits. *See Hoskins v. Hoskins*, 497 S.W.3d 490, 494 (Tex. 2016); *Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 97–101 (Tex. 2011). Thus, the parties might have agreed that an arbitration award is "non-appealable" to confirm that the parties may not challenge the merits of the arbitration award in court. *See Circle Zebra Fabricators, Ltd.*, 2011 WL 1844443, at *6; *Emerald Aero, LLC v.*

---

[4] The parties in today's case did not do so.

14

*Kaplan*, 215 Cal. Rptr.3d 5, 21–22 (Cal. Ct. App. 2017); *Falls v. 1CI, Inc.*, 57 A.3d 521, 539–40 (Md. Ct. Spec. App. 2012).[5]

Whether the parties intended the Non-Appealable Language to confirm that they were not agreeing to have appellate arbitrators review the merits of the arbitration award or whether the parties intended the Non-Appealable Language to confirm that they may not challenge the merits of the arbitration award in court, we conclude that the Non-Appealable Language cannot reasonably be construed as a waiver of the right to ask a trial court to vacate an arbitration award based on one of the Texas Arbitration Act's vacatur grounds or as a waiver of the right to appeal a judgment rendered on an arbitration award. *See International Telepassport Corp. v. USFI, Inc.,* 89 F.3d 82, 86 (2d Cir. 1996); *Osco Motors Co. v. Quality Mark, Inc.*, No. 14-887, 2014 WL 4163595, at *5–6 (D. Minn 2014); *Circle Zebra Fabricators, Ltd.*, 2011 WL 1844443, at *6; *Barsness v. Scott*, 126 S.W.3d 232, 238 (Tex. App.—San Antonio 2003, pet. denied); *Emerald Aero, LLC*, 215 Cal. Rptr.3d at 21–22; *Falls*, 57 A.3d at 539–40. So, we reject the Bailey Parties' argument that the Non-Appealable Language constitutes an express agreement to waive the right to appeal the trial court's judgment.

### 2. *Estoppel Argument Against Center Rose*

In their motion to dismiss, the Bailey Parties assert that Center Rose is estopped from pursuing this appeal under the acceptance-of-benefits doctrine

---

[5] The Bailey Parties assert that because Center Rose asserted grounds for vacating the Award under the Texas Arbitration Act, we should not consider cases decided under the Federal Arbitration Act in determining whether the parties waived the right to appeal the trial court's judgment by agreeing to the Non-Appealable Language. Though there are points on which the Texas Arbitration Act and the Federal Arbitration Act differ, the analysis of this waiver issue would be no different under the Federal Arbitration Act. Thus, we cite cases under the Federal Arbitration Act as persuasive authority. *See Forest Oil Corp. v. McAllen,* 268 S.W.3d 51, 56, n.10 (Tex. 2008).

because Center Rose cashed a check for $25,600 from Rose Acquisition. This payment related to two parts of the Award. In one part, the arbitrators stated that Center Rose should receive $16,335 from Rose Acquisition as reasonable and necessary attorney's fees, in addition to the attorney's fees Rose Acquisition already had paid under section 8.1 of Rose Acquisition's Articles of Organization. In the other part, the arbitrators stated that Rose Acquisition should reimburse Center Rose the sum of $9,265, representing that portion of the administrative fees and expenses in excess of the apportioned costs that Center Rose already had incurred.

Definitive, bright-line rules seldom appear in matters of equity. *Kramer v. Kastleman*, 508 S.W.3d 211, 228 (Tex. 2017). The Supreme Court of Texas has articulated the following nonexclusive factors to be used in determining whether estoppel bars a party from appealing a judgment based on the party's acceptance of the benefits of that judgment:

> • whether acceptance of benefits was voluntary or was the product of financial duress;
>
> • whether the right to joint or individual possession and control preceded the judgment on appeal or exists only by virtue of the judgment;
>
> • whether the assets have been so dissipated, wasted, or converted as to prevent their recovery if the judgment is reversed or modified;
>
> • whether the appealing party is entitled to the benefit as a matter of right or by the nonappealing party's concession;
>
> • whether the appeal, if successful, may result in a more favorable judgment but there is no risk of a less favorable one;
>
> • if a less favorable judgment is possible, whether there is no risk the appellant could receive an award less than the value of the assets dissipated, wasted, or converted;
>
> • whether the appellant affirmatively sought enforcement of rights or obligations that exist only because of the judgment;

16

- whether the issue on appeal is severable from the benefits accepted;
- the presence of actual or reasonably certain prejudice; and
- whether any prejudice is curable.

*Id*. at 228–29. Whether estoppel precludes a party from appealing involves a fact-dependent inquiry entrusted to the court's discretion. *Id*. at 228. One factor is whether Center Rose Partners affirmatively sought enforcement of rights or obligations that exist only because of the judgment. Yet, Center Rose Partners cashed the check for $25,600 from Rose Acquisition more than six weeks before the trial court rendered its judgment. The obligation to pay this amount exists both because of the Award and because of the judgment. Further, no party on appeal asserts that the trial court erred in ordering the payment of these amounts in its judgment.

After applying the above factors to the facts of this case, we conclude that the Bailey Parties have not shown that Center Rose is estopped from appealing the trial court's judgment based on its acceptance of this $25,600 payment from Rose Acquisition.[6] *See id*. at 30–32.

### 3. Hall's Alleged Lack of Standing to Appeal

In the motion to dismiss, the Bailey Parties assert that Hall lacks standing to appeal the trial court's judgment because he did not file a timely application to vacate, modify, or correct the Award. *See Hamm v. Millenium Income Fund, LLC*, 178 S.W.3d 256, 262–72 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). If Hall lacked standing to appeal the trial court's judgment, then this court would lack jurisdiction over Hall's appeal. *See Tex. Ass'n. of Bus. v. Tex. Air Control Bd.,* 852

---

[6] Under its third appellate issue, Center Rose argues that it is not estopped from appealing the trial court's judgment. Though we agree that Center Rose is not estopped, in neither the issue nor the argument under it does Center Rose challenge the trial court's judgment. Therefore, we do not sustain the issue.

17

S.W.2d 440, 444–45 (Tex. 1993). Even if Hall did not timely ask the trial court to vacate, modify, or correct the Award, this failure would go to the merits of Hall's appeal; it would not deprive Hall of standing to appeal, nor would it deprive this court of jurisdiction over Hall's appeal. *See Hamm*, 178 S.W.3d at 262–72. Thus, Hall has standing to appeal the trial court's judgment.

For the foregoing reasons, we deny the Bailey Parties' motion to dismiss.

**B.    Did the trial court err in refusing to vacate the Award on the ground that the arbitrators exceeded their powers?**

Under their first issue, Center Rose and the Felts (collectively the "Center Rose Parties") assert that the trial court erred in failing to vacate the Award on the ground that (1) the arbitrators exceeded their powers by adjudicating Bailey's claim that Center Rose Partners breached the Note that it signed in favor of Capital One, N.A., which Capital One later assigned to Bailey, because that claim fell outside the scope of the Regulations's narrow arbitration provision and was governed by contracts that do not have arbitration provisions; and (2) the arbitrators exceeded their powers because they lacked authority to impose a constructive trust under Texas law in the absence of a finding of fraud or breach of fiduciary duty.

### 1.    *Adjudication of Note Claim*

The Center Rose Parties argue that the arbitrators exceeded their powers by adjudicating a claim by Bailey that Center Rose Partners breached the Note because that claim fell outside the scope of the Regulations's narrow arbitration provision, in which the parties agreed to arbitrate "any dispute or controversy arising out of these Regulations." The Center Rose Parties note that Bailey filed a separate lawsuit against Center Rose Partners and Nicole Felt seeking to recover the amount Center Rose Partners owed under the Note and against Nicole Felt as

guarantor. When Center Rose Partners sought to have these claims decided in the arbitration proceeding, Bailey objected and asserted various arguments as to why his claims in that lawsuit were not subject to arbitration. In response, the trial court in the other lawsuit ordered the case abated until completion of the arbitration proceeding.

Under section 171.088(a)(3)(A), on application of a party, the court shall vacate an arbitration award if the arbitrators exceeded their powers. Tex. Civ. Prac. & Rem. Code Ann. § 171.088(a)(3)(A). Arbitrators exceed their powers if they lack the authority to decide the issues adjudicated in the arbitration award; arbitrators do not exceed their authority by erroneously deciding an issue. *See Forest Oil Corp. v. El Rucio Land & Cattle Co*., 518 S.W.3d 422, 431–32 (Tex. 2017).

In their arbitration demand, the Bailey Parties did not request that Bailey be reimbursed for the amount of the Note he purchased from Capital One. In their answer in the arbitration, the Center Rose Parties did not object that there was no arbitration agreement or that the Regulations's arbitration agreement did not cover any claim. Instead, they stated that they "submit to the jurisdiction of the arbitration proceedings for those matters that are required to be arbitrated," without stating which matters were required to be arbitrated.

In the arbitration, the Center Rose Parties asserted as affirmative claims for relief all claims that Center Rose had asserted in the trial court. In these claims, the Center Rose Parties asserted that Center Rose Partners and Bailey entered into an agreement under which Center Rose Partners would use earnings and distributions resulting from the 330 units in Rose Acquisition to pay the cost of purchasing the units, including interest and taxes (the "Center Rose/Bailey Agreement"). In the trial-court petition, which the Center Rose Parties

19

incorporated into their arbitration pleading, the Center Rose Parties sought relief under the Texas Declaratory Judgments Act, asking the arbitrators to declare that Bailey breached the Center Rose/Bailey Agreement and that this agreement was void. In their arbitration pleading, the Center Rose Parties also asked the arbitrators to declare that the "debt to Capital One Bank or its assignees, allegedly assigned to Bailey" would be cancelled "as a credit against the funds owed to Rose Acquisition by Bailey, including but not limited to a release of all liens of any kind or nature related to this debt." In their arbitration demand the Bailey Parties asserted that Center Rose Partners promised that Center Rose Partners would use the distributions received from Rose Acquisition to pay off the Loan. If this were true, then Center Rose Partners's breach of the Note also would breach this promise by Center Rose Partners. The Bailey Parties asserted in their arbitration demand that Center Rose Partners failed to pay the Loan in full by the maturity date, and that as a result Bailey was forced to purchase the Loan.

The Bailey Parties assert that the Center Rose Parties submitted the issue of the Note to the arbitrators for a ruling and therefore the arbitrators did not exceed their authority. The Center Rose Parties claim that they requested that the arbitrators cancel the Note before the trial court in the other lawsuit declined to send Bailey's lawsuit on the Note and guaranty to arbitration, and that after this action, the Center Rose Parties did not continue to seek cancellation of the Note. The Bailey Parties assert that the Center Rose Parties never removed this request from their arbitration pleading or otherwise withdrew this request from the arbitrators' consideration.

Texas courts give arbitration awards great deference and indulge every reasonable presumption to uphold arbitrators' decisions. *Long Lake, Ltd. v. Pillittere*, No. 14-17-00373-CV, 2018 WL 3911070, at *2 (Tex. App.—Houston

20

[14th Dist.] Aug. 16, 2018, no pet.) (mem. op.). The Center Rose Parties, as non-prevailing parties seeking to vacate the arbitration award, bear the burden to produce a complete record of the arbitration proceedings establishing that the arbitrators exceeded their authority. *See id*. Absent a complete transcript of the arbitration proceedings, we are to presume that adequate evidence supports the Award. *See id.* The Center Rose Parties have not provided any transcription of the arbitration proceedings, and the Bailey Parties assert that this failure is fatal to the Center Rose Parties' complaint that the arbitrators exceeded their powers in issuing the Award.

Without a transcript of the arbitration proceedings, we cannot determine whether a party asked the arbitrators during the proceedings to decide issues regarding the Note and its breach. *See id*. at *3 (concluding that absent a complete transcription of the arbitration proceedings court would presume that the evidence gave the arbitrator the power to issue the award that appellant alleged exceeded the arbitrator's power); *Craft v. Davis*, No. 2-07-332-CV, 2008 WL 4180357, at *2 (Tex. App.—Fort Worth Sept. 11, 2008, no pet.) (mem. op.) (holding that appellant did not prove that arbitrator exceeded his powers because appellant did not submit transcript of arbitration proceedings and thus court could not determine whether a party to the arbitration asked the arbitrator during the arbitration to decide the challenged issues); *Klein v. O'Quinn*, 874 S.W.2d 776, 783 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (concluding that without a record of the arbitration proceedings the court was not able to determine what claims the parties submitted or what evidence the parties offered). Given the lack of any transcription of the arbitration proceedings, we conclude that the Center Rose Parties have not established that the arbitrators exceeded their powers by adjudicating a claim by Bailey that Center Rose Partners breached the Note. *See Pillittere*, 2018 WL

21

3911070, at *3; *Craft*, 2008 WL 4180357, at *3; *Klein*, 874 S.W.2d at 783.

### 2. Imposition of Constructive Trust

Under their first issue, the Center Rose Parties also assert that the arbitrators exceeded their powers because in the absence of a finding of fraud or breach of fiduciary duty, under Texas law they lacked the authority to impose a constructive trust. In their first amended arbitration demand, the Bailey Parties alleged that the Center Rose Parties committed fraud and breached fiduciary duties. The Bailey Parties also sought the imposition of a constructive trust on the 330 units in Rose Acquisition at issue to prevent the alleged unjust enrichment of the Center Rose Parties at the Bailey Parties' expense.

The Center Rose Parties assert that though parties may draft contracts to empower arbitrators to impose equitable remedies beyond what the law permits, the parties in today's case did not do so. According to the Center Rose Parties, the parties to the Regulations limited the arbitrators' powers by agreeing that Texas law would govern the Regulations. The Center Rose Parties assert that, under Texas law, courts may not impose a constructive trust absent a breach of fiduciary duty, actual fraud, or constructive fraud. The arbitrators imposed a constructive trust without an express finding of any fraud or breach of fiduciary duty. In addition, the arbitrators found that "[t]he misconduct of the Parties was neither 'intentional' nor a 'knowing violation of the law.'"

The Center Rose Parties correctly acknowledge that a mistake of law by the arbitrators does not mean that the arbitrators exceeded their powers. *See Forest Oil Corp.*, 518 S.W.3d at 431–32. Instead, the Center Rose Parties assert that by agreeing that Texas law governs the Regulations, the parties to the Regulations limited the power of the arbitrators to impose a constructive trust so that the arbitrators only have that power under circumstances in which Texas law permits

22

imposition of a constructive trust. The Center Rose Parties cite no case in which a court has held that a choice-of-law provision limits an arbitrator's powers.

Absent a complete transcription of the arbitration proceedings, we conclude that the Center Rose Parties have not established that the arbitrators exceeded their powers by imposing a constructive trust. *See Pillittere*, 2018 WL 3911070, at *3; *Craft*, 2008 WL 4180357, at *3; *Klein*, 874 S.W.2d at 783. In any event, we conclude that the Center Rose Parties' legal argument lacks merit. The Supreme Court of Texas in *Nafta Traders* held that parties to an arbitration agreement governed by the Texas Arbitration Act may agree that the arbitrators have no power to render a decision that contains a reversible error or to apply a remedy that existing law does not expressly provide. *See Nafta Traders, Inc.*, 339 S.W.3d at 90–97. Nonetheless, an agreement that Texas law governs the contract containing the arbitration provision does not constitute an agreement limiting the powers of the arbitrators in either of these ways. *See id.*; *Jones v. Carlos & Parnell, M.D., P.A.*, No. 5-17-00329-CV, 2017 WL 4930896, at *3–4 (Tex. App.—Dallas Oct. 31, 2017, pet. denied) (mem. op.).

## C. Did the Arbitrators fail to address the Center Rose Parties' statute-of-limitations defense in the Award?

Under the first issue, the Center Rose Parties argue that the trial court erred in refusing to vacate the Award on the ground that the arbitrators completely failed to address the Center Rose Parties' statute-of-limitations defense to the Bailey Parties' claims. The Center Rose Parties claim that this failure would mean that the arbitrators conducted the hearing contrary to section 171.047 by denying the Center Rose Parties their right to be heard, in a manner that substantially prejudiced their rights. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 171.047, 171.088(a)(3)(D). The Center Rose Parties assert that the arbitrators said nothing

about this defense and that they did not address this defense or the Bailey Parties' arguments against it in the Award.

We presume, without deciding, that a complete failure to address the Center Rose Parties' statute-of-limitations defense would mean that the arbitrators conducted the hearing contrary to section 171.047 by denying the Center Rose Parties their right to be heard, in a manner that substantially prejudiced their rights. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 171.047, 171.088(a)(3)(D). Without a complete transcription of the arbitration proceedings, we must conclude that the Center Rose Parties have not established that the arbitrators completely failed to address this defense because the arbitrators may have addressed it during the arbitration proceeding. *See Pillittere*, 2018 WL 3911070, at *3; *Craft*, 2008 WL 4180357, at *3; *Klein*, 874 S.W.2d at 783. In the alternative, the arbitrators stated in the Award that "[t]his Award is in full settlement of all claims and counterclaims submitted to this Arbitration. All claims not expressly granted herein are hereby denied." The Center Rose Parties acknowledge this part of the Award but argue that it does not address their statute-of-limitations defense because the arbitrators refer to "claims" and "counterclaims" but not to "defenses." We conclude that this language suffices to constitute a ruling on the statute-of-limitations defense, and thus, the arbitrators addressed and rejected this defense in a general manner in the Award. The Center Rose Parties cite no authority that would suggest otherwise.

The trial court did not err in refusing to vacate the Award on the ground that the arbitrators completely failed to address this defense and thus conducted the hearing contrary to section 171.047 by denying the Center Rose Parties their right to be heard, in a manner that substantially prejudiced their rights. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 171.047, 171.088(a)(3)(D).

24

Having rejected all of the Center Rose Parties' independent arguments under the first issue, we overrule the first issue.

**D.    Were the Felts parties to the litigation in the trial court when the trial court rendered judgment against them?**

In the second issue, the Center Rose Parties complain that the trial court erred in rendering judgment against the Felts because they were not parties to the litigation in the trial court.  The Felts were parties to the arbitration proceeding, but the Felts had not been parties to this litigation before the arbitrators issued the Award.  When Center Rose filed its application to vacate the Award based on grounds in section 171.088 of the Texas Civil Practice and Remedies Code, the Felts filed a plea in intervention in the trial court and filed an application to vacate the Award under the same statute.  The Bailey Parties filed a motion to strike the Felts' plea in intervention and application to vacate the Award.  Though the Bailey Parties submitted that motion to the trial court for ruling, the trial court never ruled on the motion to strike.

The trial court denied Center Rose's application to vacate the Award and granted the Bailey Parties' motion to confirm the Award.  The trial court rendered a final judgment on the Award.  After the trial court rendered judgment, the Bailey Parties filed a notice that they were withdrawing their motion to strike.

Rule 60 of the Texas Rules of Civil Procedure states that "[a]ny party may intervene by filing a pleading, subject to being stricken out by the court for sufficient cause on the motion of any party."  Tex. R. Civ. P. 60.  The rule authorizes a party with a justiciable interest in a pending suit to intervene in the suit as a matter of right.  *Nghiem v. Sajib*, 567 S.W.3d 718, 721 (Tex. 2019).  An intervenor is not required to secure the trial court's permission to intervene; any party who opposes the intervention has the burden to challenge it by a motion to

25

strike. *Id.* If any party to the pending suit moves to strike the intervention, the intervenor has the burden to show a justiciable interest in the pending suit. *Id.*

On appeal, the Center Rose Parties assert that because the Bailey Parties filed a motion to strike, the Felts had the burden to show a justiciable interest in the pending suit and any presumption that the Felts were proper parties was erased. Though this may be a correct statement of the legal standards that would have applied had the trial court ever ruled on the motion to strike, the Center Rose Parties appear to assert that the mere pendency of a motion to strike — even if the trial court never rules on the motion — deprives an intervenor of any status as a party to the litigation. This is not a correct statement of Texas law. Intervenors are parties until the trial court grants a motion to strike. *See Main Rehab. & Diagnostic Ctr., LLC v. Liberty Mut. Ins. Co.*, 376 S.W.3d 825, 828 (Tex. App.–Dallas 2012, no pet.) (concluding that the Workers' Compensation Division was a party to the case because the appellants did not file a motion to strike and obtain a ruling from the trial court striking the intervention); *Bell v. Craig*, 555 S.W.2d 210, 211–12 (Tex. Civ. App.—Dallas 1977, no writ) (holding that appellant was a party to the litigation because he filed a petition in intervention and because the appellees never obtained a ruling on their motion to strike the intervention).

When the trial court rendered judgment, the Felts were parties to the litigation with a pending application to vacate the Award. Though the trial court did not expressly rule on the Felts' application to vacate, by rendering a final judgment on the Award, the trial court implicitly denied the Felts' application to vacate the Award. *See Kreit v. Brewer & Pritchard, P.C.*, 530 S.W.3d 231, 236, n.6. (Tex. App.—Houston [14th Dist.] 2017, pet. denied).

We overrule the second issue.

26

**E.     Did Hall timely file an application to vacate the Award?**

In Hall's appeal, Hall asserts that the trial court erred by confirming the Award and refusing to vacate a part of the Award.   A party must make an application to vacate an arbitration award under section 171.088 not later than the 90th day after the date of delivery of a copy of the award to the party. Tex. Civ. Prac. & Rem. Code Ann. § 171.088(b).   A party must make an application under subsection (a)(1) of section 171.088 not later than the 90th day after the date the grounds for the application are known or should have been known.   *Id.*   We presume for the sake of argument that Hall filed his motion for new trial seeking vacatur within 90 days after the date on which a copy of the Award was first delivered to Hall.   The record reflects that Hall was served with copies of the Bailey Parties' motion to confirm the Award and the notice of oral hearing on this motion.   Hall did not respond in opposition to the Bailey Parties' motion to confirm the Award.   Nor did Hall file an application asking the trial court to vacate, modify, or correct the Award until after the trial court granted the Bailey Parties' motion and rendered judgment on the Award.   If the pending applications to vacate are denied and a motion to modify or correct the award is not pending, the trial court must confirm the award. *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.088(c).   Hall did not seek vacatur of the Award until after the trial court denied the Center Rose Parties' applications to vacate, confirmed the Award, and rendered final judgment. Thus, Hall's application to the trial court to vacate the Award was untimely, and Hall waived his right to seek vacatur of the Award.   *See Human Biostar, Inc. v. Celltex Therapeutics Corp.*, 514 S.W.3d 854, 851 (Tex. App.—Houston [14th Dist.] 2017, pet. denied); *Hamm*, 178 S.W.3d at 262–72.   Therefore, we overrule Hall's sole appellate issue.

## III. CONCLUSION

The Non-Appealable Language does not constitute an express agreement to waive the right to appeal the trial court's judgment. The Bailey Parties have not shown that Center Rose is estopped from appealing the trial court's judgment based on its acceptance of a $25,600 payment from Rose Acquisition. Hall has standing to appeal the trial court's judgment. Thus, we deny the Bailey Parties' motion to dismiss the appeals.

The Center Rose Parties have not established that the arbitrators exceeded their authority. The Center Rose Parties have not shown that the arbitrators completely failed to address the Center Rose Parties' statute-of-limitations defense and thus conducted the hearing contrary to section 171.047 by denying the Center Rose Parties their right to be heard, in a manner that substantially prejudiced their rights.

When the trial court rendered judgment, the Felts were parties to the litigation with a pending application to vacate the Award. The trial court did not render judgment against a person not a party to the litigation.

Hall's appeal lacks merit because he waived his right to obtain vacatur of the Award by failing to timely file his application in the trial court to vacate the Award.

We affirm the trial court's judgment.


/s/    Kem Thompson Frost
       Chief Justice


Panel consists of Chief Justice Frost and Justices Spain and Poissant (Spain, J., dissenting).

28