

# NUMBER 13-24-00614-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**HOFER BUILDERS, INC.,**                                              **Appellant,**

**v.**

**LINKS CONSTRUCTION, LLC,**
**AND THE GUARANTEE COMPANY**
**OF NORTH AMERICA USA,**                                      **Appellees.**

---

## ON APPEAL FROM THE 67TH DISTRICT COURT
## OF TARRANT COUNTY, TEXAS

---

# MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices Cron and Fonseca**
**Memorandum Opinion by Justice Fonseca**

Appellant Hofer Builders, Inc. (Hofer) appeals a judgment confirming an arbitration award via four points of error, two of which seek to overturn the award and two of which seek to modify the award. We reverse and remand in part to resolve mislabeling of the projects, to correct some interest, and because the award is ambiguous regarding the

arbitrator's intentions on Hofer's lien relief. We otherwise affirm the judgment.[1]

## I. BACKGROUND

Hofer appeals from a final judgment confirming an arbitration award awarding damages to appellees[2] arising out of disagreements on two construction projects. Appellee Links Construction, LLC (Links) is a general contractor that was hired to complete two construction projects: Burnett Lofts in Fort Worth and Brazos Promenade in Waco. In 2020, Links hired Hofer to serve as a framing subcontractor on these projects.

Disputes arose during construction regarding certain change orders. These change orders resulted in a different order of construction for buildings at Brazos Promenade. This resulted in Links requesting changes to Hofer's building schedule. Hofer claimed the schedule changes were unreasonable and eventually refused to commence work on "Building 1" at the Brazos Promenade project. Links issued several notices before eventually terminating Hofer from the project (and consequently from Burnett Lofts) and hiring another framer to finish Hofer's scope of work. Hofer sought damages in the form of unpaid invoices while Links sought damages for the cost of the unfinished work. As a result of the disputes, Hofer filed liens against the Burnett Lofts and Brazos Promenade properties for the alleged unpaid amounts in the respective counties' real property records.

The parties' subcontracts contained an arbitration agreement encompassing "all claims, disputes, and other matters in question arising out of or relating to this Agreement

---

[1] This appeal was transferred from the Second Court of Appeals in Fort Worth pursuant to an order issued by the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001. We are required to follow the precedent of the transferor court to the extent it differs from our own. TEX. R. APP. P. 41.3.

[2] Appellee The Guarantee Company of North America USA was the surety for the payment bonds on the projects but will be otherwise unmentioned throughout this memorandum opinion.

or the breach thereof." The arbitration agreement also specified that judgment would be entered pursuant to the Texas Arbitration Act. The parties hired a private arbitrator on February 9, 2023, to resolve their disagreements and signed a separate arbitration agreement. This agreement stated "[p]ursuant to the terms of each written Construction Contract, Links and Hofer agree to submit any and all claims arising out of said projects to binding Arbitration."

The arbitrator issued an award on January 11, 2024. The award identified the primary dispute as centering on "a commercial project in Waco, Texas" located on the banks of the Brazos River that it called "the Project." It also identified "several residual issues" stemming from a project located in Fort Worth that it titled "the Brazos Lofts." The arbitrator found that Links made several unreasonable demands to Hofer regarding the scheduling of framing at "the Project," including demanding Hofer start framing "when underslab rough plumbing, slabs and foundations were not completed" in violation of Paragraph 4.2 of the subcontract, and that Links "failed to provide adequate material staging areas" or "reasonable access to the jobsites." The arbitrator noted that Hofer's work was "excellent." However, the arbitrator found that none of the delays were a material breach of the subcontract and that Links and Hofer had each caused construction delays.

Ultimately, the arbitrator found that Hofer breached the subcontract by refusing to start "Building 1" and "pulled off" the job after two notices of default and a few hours before receiving Links's termination notice. The arbitrator further found that Links was current on its payments to Hofer at the time of termination but that the last work completed by Hofer "reflected in Pay Applications 17 and 18" were due to Hofer, "as [was] the Project's

3

retainage for [Hofer]'s completed work."

On January 11, 2024, the arbitrator awarded damages to Links in the amount of $1,263,745.61 to "repair, replace and complete" Hofer's work and noted that this sum included a credit for Hofer totaling $251,261.60 "for Retainage and Pay Application 20 for Brazos Lofts." The arbitrator also awarded attorney's fees and costs of $116,147.05, pre-judgment interest of $254,130, and 8.5% annual post-judgment interest commencing from the thirty-first day of the award until paid in full. The arbitrator noted a separate credit to Hofer of $308,049.64 "representing payment of Applications 17 and 18 and the Retainage from the Project." On February 23, 2024, the arbitrator modified the award to note that Hofer completed work "on Buildings 2 through 5" and excluded reference to Hofer completing work on Building 1.

Appellees subsequently filed for confirmation of the award in the trial court on February 27, 2024. On April 9, 2024, Hofer filed its motion for modification or correction of the arbitration award on several grounds. First, Hofer argued that it was improper for the arbitrator to enter "cost-of-completion" damages against it after not finding abandonment on Hofer's part. Second, it argued the award contained mistakes because it misstated the date Hofer "abandoned" the jobsite and incorrectly stated that it received two notices of default when it in fact received three. Third, Hofer attacked the award as contradictory for finding that Hofer breached the subcontract yet also finding that Hofer was not obligated to start framing Building 1. Fourth, it contended the award incorrectly stated that Hofer started work on Building 1 when it did not. Both parties filed supplemental briefing regarding all of these issues.

On June 21, 2024, the trial court held a hearing regarding confirmation of the

4

arbitration award. At the hearing, Hofer presented evidence regarding the alleged mistakes in the award, namely, several change orders and communications regarding Hofer being terminated from the project if they did not begin work. Hofer argued this evidence demonstrated that these items were related to the Brazos Promenade, not the Burnett Lofts project in Fort Worth. Tom Hofer, the owner of Hofer, testified that his company did not abandon Brazos Promenade but, rather, that they were terminated and that they did not start Building 1. There was further testimony regarding the application numbers as awarded in the arbitration award not existing on the Brazos Promenade project. Hofer argued that "Pay Application 18" only existed as to the Burnett Project, not the Brazos Promenade as the award stated. Hofer further argued that the arbitrator exceeded his authority by awarding a remedy not in accordance with the factual findings. Finally, it also argued that awarding prejudgment interest from the date of the arbitration award to the date of the final judgment was improper, as well as awarding prejudgment interest from November 11, 2021.

On July 8, 2024, the trial court signed a final judgment confirming the arbitration award as entered "with the exception of revising the pre-judgment interest amount through June 28, 2024," for a total damages award of $1,192,692.85. The judgment also awarded pre-judgment interest of "$222.56 a day until a final judgment is signed" and post-judgment interest from the date of the final judgment at a rate of 8.5%. The final judgment also ordered that Hofer's lien affidavits "are removed and are in invalid as a matter of law and shall be removed by [Hofer] from the Tarrant and McLennan County official public records no later than ten days after the date of [the] Final Judgment."

On August 7, 2024, Hofer filed a motion to modify the judgment or for new trial,

5

arguing that the arbitrator awarded improper damages and that the final judgment improperly awarded removal of the liens that did not comport with the relief in the arbitration award. It also argued for the removal of "post-arbitration, prejudgment interest." This appeal followed after the motion was overruled by operation of law.

## II. ANALYSIS

Hofer raises four issues on appeal. In its first two issues, Hofer argues this Court should either remand the arbitration award for clarification or vacate the award entirely. In the second pair of alternate issues, Hofer argues the award should be modified to change the interest calculation and to remove the lien relief.

### A. Standard of Review

"Texas law favors arbitration, [therefore] judicial review of an arbitration award is extraordinarily narrow." *E. Tex. Salt Water Disposal Co. v. Werline*, 307 S.W.3d 267, 271 (Tex. 2010). We review a trial court's decision to confirm an arbitration award de novo and will review the entire record in doing so. *O'Grady v. Nat'l Union Fire Ins. Co. of Pitt., P.A.*, 506 S.W.3d 121, 124 (Tex. App.—Corpus Christi–Edinburg 2016, pet. denied) (quoting *In re Guardianship of Cantu de Villarreal*, 330 S.W.3d 11, 17 (Tex. App.—Corpus Christi–Edinburg 2010, no pet.)). "All reasonable presumptions are indulged in favor of the award, and none against it." *In re Chestnut Energy Partners, Inc.*, 300 S.W.3d 386, 397 (Tex. App.—Dallas 2009, pet. denied). If the trial court resolved factual issues in confirming the award, "the review is for legal or factual sufficiency." *DeAnder & Felhaber, LP v. Montgomery*, 615 S.W.3d 352, 356 (Tex. App.—El Paso 2020, pet. denied).

"Subjecting arbitration awards to judicial review adds expense and delay, thereby diminishing the benefits of arbitration as an efficient, economical system for resolving

6

disputes." *O'Grady*, 506 S.W.3d at 125 (quoting *In re Cantu*, 330 S.W.3d at 17 (internal citations omitted)). Accordingly, the trial court cannot substitute its judgment for the arbitrator's or speculate about the arbitrator's intent. *Garza v. Phelps Dodge Ref. Corp.*, 262 S.W.3d 514, 519 (Tex. App.—El Paso 2008, no pet.); *Baker Hughes Oilfield Operations, Inc. v. Henning Prod. Co.*, 164 S.W.3d 438, 447 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *Rouse v. Campbell*, No. 09-21-00023-CV, 2022 WL 17840426, at *9 (Tex. App.—Beaumont Dec. 22, 2022, no pet.) (mem. op.). Even if there is a mistake of fact or law by the arbitrator, this is not proper grounds for vacating an award. *Crossmark, Inc. v. Hazar*, 124 S.W.3d 422, 429 (Tex. App—Dallas 2004, pet. denied). "[A]n arbitration award is given the same effect as a judgment of a court of last resort." *MCR Oil Tools, LLC v. Halliburton Energy Servs., Inc.*, 692 S.W.3d 859, 863 (Tex. App.—Fort Worth 2024, pet. denied). "When there is no transcript of the arbitration hearing, as here, [we] will presume the evidence was adequate to support the award." *In re Chestnut*, 300 S.W.3d at 401.

## B.    Remand of Arbitration Award

Hofer first contends that the trial court should have remanded the arbitration award for correction due to alleged mistakes in the award. Namely, Hofer argues the award: (1) misidentifies the construction projects at issue; (2) accordingly awards damages for a non-existent pay application; and (3) accordingly failed to properly apply credits against Links's recovery. Due to these alleged errors, Hofer argues the award is ambiguous and should have been remanded to the arbitrator for clarification. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.054(a)(2), (b)(2). Conversely, appellees argue the sought modifications are not proper and the award should be undisturbed.

### 1. Applicable Law

Texas courts are required to confirm arbitration awards absent specific statutory grounds for modifying or correcting the award. *Id*. § 171.087; *Hoskins v. Hoskins*, 497 S.W.3d 490, 494 (Tex. 2016). However, courts are required to "modify or correct" awards that contain "(A) an evident miscalculation of numbers; or (B) an evident mistake in the description of a person, thing, or property referred to in the award." TEX. CIV. PRAC. & REM. CODE ANN. § 171.091(a)(1).

For modification to be required, a mistake in miscalculation of numbers must be clear, concise, and conclusive from the record. *Roehrs v. FSI Holdings, Inc.*, 246 S.W.3d 796, 813 (Tex. App—Dallas 2008, pet. denied); *see also DHM Hosp., LLC v. Shah*, No. 13-17-00078-CV, 2018 WL 6218071, at *3 (Tex. App.—Corpus Christi–Edinburg Nov. 29, 2018, pet. denied) (mem. op.). This implies that the error occurred due to inadvertence or oversight. *Roehrs*, 246 S.W.3d at 813; *see also Shah*, 2018 WL 6218071, at *3. There is no evident miscalculation if the amount of the award is rationally inferable from the facts before the arbitrator. *Vernon E. Faulconer, Inc. v. HFI, LP*, 970 S.W.2d 36, 40 (Tex. App.—Tyler 1998, no pet.); *see also Shah*, 2018 WL 6218071, at *3. In other words, unless error appears on the face of the award, we must presume there was no miscalculation. *City of Baytown v. C.L. Winter, Inc.*, 886 S.W.2d 515, 520 (Tex. App.— Houston [1st Dist.] 1994, writ denied). Some of our sister appellate courts have held that correction by the trial court of clerical or typographical errors in an arbitration award is a permissible mandatory correction. *Brad Herriage v. BNSF Logistics, LLC*, No. 05-16-01232-CV, 2017 WL 5559570, at *6 (Tex. App.—Dallas Nov. 17, 2017, no pet.) (mem. op.). This has included modifying a mislabeled company name. *See Rouse*, 2022 WL

17840426, at *10, n.10.

On the other hand, we cannot enforce ambiguous awards and "must remand to the arbitrator with instructions to clarify the award's particular ambiguities" in such circumstances. *Stage Stores, Inc. v. Gunnerson*, 477 S.W.3d 848, 855 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (quoting *Brown v. Witco Corp.*, 340 F.3d 209, 216 (5th Cir. 2003)); *see also Eaton Com., L.P. v. Paradigm Hotel SA Riverwalk, LP*, 2016 WL 5795195, at *2 (Tex. App.—San Antonio Oct. 5, 2016, no pet.) (mem. op.). Remand is appropriate where there is an apparent mistake on the face of the award, or the award is ambiguous in scope or implementation. *Gunnerson*, 477 S.W.3d at 856. However, in such circumstances, remand to the arbitrator "is but a preface to determining confirmation." *Werline*, 307 S.W.3d at 270–71. Absent an allegation that an award is ambiguous or incomplete, remand to the arbitrator after the trial court confirms the appraisal award, as is the case here, is inappropriate. *See In re Akin Gump Strauss Hauer & Feld, LLP*, 252 S.W.3d 480, 491 (Tex. App.—Houston [14th Dist.] 2008, orig. proceeding). However, this Court has previously remanded an award to an arbitrator post-confirmation after determining there was an ambiguity in the award regarding the scope of the dispute and whether arbitration had resolved all issues between the parties. *See In re Nestle USA-Beverage Div., Inc.*, 82 S.W.3d 767, 778 (Tex. App—Corpus Christi–Edinburg 2002, orig. proceeding).

### 2. Discussion

The three alleged mistakes that Hofer raises are all related to the fact that the arbitration award mistakenly labeled the two construction projects in a parlance otherwise unused throughout the case. Though the project located in Waco was called Brazos

9

Promenade, the award instead refers to this as "the Project" and it calls the project located in Fort Worth "the Brazos Lofts", despite all evidence in the record indicating this development was called the Burnett Lofts. Hofer contends that it is impossible to determine whether the arbitrator incorrectly labeled the Burnett Lofts, incorrectly identified a pay application number or made some other combination of mistakes. Accordingly, Hofer urges these mistakes render the award ambiguous and require remand. *See Gunnerson*, 477 S.W.3d at 855; *see also Eaton Com., L.P.*, 2016 WL 5795195, at *2.

We disagree. The complained-of mistakes are evident from the record and may be reconciled by correcting the award's improper labeling. As the award on its face refers to the Waco project as "the Project", we will take all references to "the Project" to mean the Brazos Promenade. Likewise, as the award explicitly refers to the Fort Worth project as "the Brazos Lofts", we determine that any reference to "the Brazos Lofts" is meant to reference the Burnett Lofts. While we cannot speculate as to the arbitrator's intent, this is not speculation but rather a typographical error that courts can correct without remanding to the arbitrator. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.091(a)(1)(B); *see also Rouse*, 2022 WL 17840426, at *10, n.10; *Brad Herriage*, 2017 WL 5559570, at *6.

Once the award is reviewed considering this correction, Hofer's complaints are resolved. Hofer complains that the award referenced a credit "for Retainage and Pay Application 20 for Brazos Lofts" that does not exist. But if the award is corrected, and the credit is instead "for Retainage and Pay Application 20" for the Burnett Lofts, then as Hofer itself states, the credit amount in the award matches the amounts for the retainage and pay application that does exist for the Burnett Lofts. Likewise, the award also gave a credit to Hofer representing "payment of Applications 17 and 18 and the Retainage from

10

the Project." If "the Project" is corrected to mean Brazos Promenade, then this mistake is reconciled as the record contains Applications 17 and 18 for the Brazos Promenade and related retainage, which, when summed, match the amount of the credit in the award. Hofer also argues that it is unclear whether both credits were applied, but as we can glean from the record, both credits were applied, if at different steps of the award calculation. But the arbitrator's application of both credits is plain on the award's face.

Because this simple correction resolves any apparent mistakes, we shall indulge this as a reasonable presumption in favor of preserving the award, as we are required to do. *See In re Chestnut Energy Partners, Inc.*, 300 S.W.3d at 397. This is an evident mistake in labeling that the trial court should have corrected as the statute required without need for remand. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.091; *see also Rouse*, 2022 WL 17840426, at *10, n.10; *Brad Herriage*, 2017 WL 5559570, at *6. It is evident from the record and award's face that this was an oversight on the arbitrator's part. *See Roehrs*, 246 S.W.3d at 813; *see also Shah*, 2018 WL 6218071, at *3. This does not render the award ambiguous such that it requires a remand. *See Gunnerson*, 477 S.W.3d at 856. Hofer's argument that it is unclear whether the arbitrator intended to award "something else" because of this labeling mistake is unconvincing and without support in light of the record.

We therefore sustain Hofer's first issue in part, in that we remand the judgment to the trial court with instructions to modify the judgment to reflect correction of the arbitration award pursuant to § 171.091 to change all references of "the Project" to "the Brazos Promenade" and all references to the "Brazos Lofts" to "Burnett Lofts." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.091(a)(1)(B). We otherwise overrule Hofer's first issue.

11

## C. Vacating Arbitration Award

Hofer next argues the entire arbitration award should be vacated because the award was not faithful to the parties' contractual terms.

### 1. Applicable Law

Texas courts are required to vacate arbitration awards if the arbitrator exceeded his powers. TEX. CIV. PRAC. & REM. CODE ANN. § 171.088(a)(3)(A); *Hoskins*, 497 S.W.3d at 494–95. "In arbitration conducted by agreement of the parties, the rule is well established that '[a]n arbitrator derives his power from the parties' agreement to submit to arbitration.'" *Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 90 (Tex. 2011) (quoting *City of Pasadena v. Smith*, 292 S.W.3d 14, 20 (Tex. 2009) (further citations omitted)). Therefore, the parties' contracted intentions control the extent of the arbitrator's powers, and the arbitrator is limited to the matters submitted, whether "expressly or by necessary implication." *O'Grady*, 506 S.W.3d at 126 (quoting *Grand Homes 96, L.P. v. Loudermilk*, 208 S.W.3d 696, 705 (Tex. App.—Fort Worth 2006, pet. denied)); *Quinn*, 339 S.W.3d at 90 (citing *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010)). The parties' agreed criteria governs the arbitration, and an arbitrator exceeds his authority in deciding an issue if he ignores the agreed criteria. *See City of Beaumont v. Int'l Ass'n of Firefighters, Loc. Union No. 399*, 241 S.W.3d 208, 215 (Tex. App.—Beaumont 2007, no pet.).

However, "[w]e give strong deference to the arbitrator with respect to issues properly left to the arbitrator's resolution." *O'Grady*, 506 S.W.3d at 124–25. "[A]ny doubts concerning the scope of what is arbitrable should be resolved in favor of the arbitration." *Id*. (quoting *Centex/Vestal v. Friendship W. Baptist Church*, 314 S.W.3d 677, 684 (Tex.

App—Dallas 2010, pet. denied)). An arbitrator exceeds his authority only "when he disregards the contract and dispenses his own idea of justice." *D.R. Horton-Tex., Ltd. v. Bernhard*, 423 S.W.3d 532, 534 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (collecting cases)). "Contentions that the arbitrator's reasoning was legally erroneous or internally inconsistent, or that the arbitrator misinterpreted the contract or misapplied the law do not provide a basis for vacating an award." *Denbury Offshore, LLC v. Texcal Energy S. Tex., L.P.*, 513 S.W.3d 511, 520 (Tex. App.—Houston [14th Dist.] 2016, no pet.). "Because the parties bargained for the arbitrator's construction of their agreement, an arbitral decision *even arguably construing or applying the contract* must stand, regardless of a court's view of its (de)merits." *Id*. (quoting *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 564 (2013) (internal quotations omitted) (emphasis added)).

## 2.    Discussion

Hofer claims that the arbitration award improperly awarded termination damages despite the arbitrator "appear[ing] to find abandonment" on Hofer's part. According to Hofer, the arbitration agreement limited the arbitrator's ability to award damages only in strict compliance with the subcontract's stated remedies.

Hofer's position is a classic instance of arguing that the arbitrator mistakenly applied the law and was internally inconsistent. Hofer's claims all revolve around its view that the arbitrator mixed up the legal standards for various damage types. But even assuming Hofer is entirely correct that the arbitrator improperly awarded termination damages despite an abandonment finding, this does not mean the arbitrator disregarded the contract or "dispens[ing] his own idea of justice." *Bernhard*, 423 S.W.3d at 534.

Instead, Hofer alleges that the arbitrator "misapplied the law," which precedent

clearly holds does "not provide a basis for vacating an award." *Denbury Offshore, LLC*, 513 S.W.3d at 520; *see Hazar*, 124 S.W.3d at 429. Further, Hofer's argument that the arbitrator was narrowly limited by the subcontract terms does not comport with the broad arbitration language used in the initial arbitration agreement. Without specific limiting language, such as limiting the arbitrator from rendering a decision containing a reversible error of law, the arbitrator maintains broad authority to resolve all disputes in the scope of the agreement. *See, e.g., Quinn*, 339 S.W.3d at 88; *see also Ron v. Ron*, No. 01-22-00731-CV, 2024 WL 5249159, at *8 (Tex. App.—Houston [1st Dist.] Dec. 31, 2024, no pet.) (mem. op.) ("Absent restrictive language, an arbitrator has broad discretion to fashion an appropriate remedy.").

Here, the arbitration agreement broadly gave the arbitrator authority to resolve "all claims, disputes, and other matters in question arising out of or relating to this Agreement or the breach thereof." The language Hofer references from the second arbitration agreement[3] for its argument is likewise broad when reviewing the full sentence: "[p]ursuant to the terms of each written Construction Contract, Links and Hofer agree to submit any and all claims arising out of said projects to binding Arbitration." Contrary to Hofer's claims, there is no limitation that would prevent the arbitrator from acting as he did in crafting the award here.

Because the arbitrator applied damages within the scope of the subcontract, even if he misapplied legal standards, the decision "must stand." *Denbury Offshore, LLC*, 513 S.W.3d at 520. We overrule Hofer's second issue.

---

[3] The second agreement incorporated the language of the first agreement.

**D.     Judgment Interest**

In its third issue, Hofer argues the judgment should be modified to remove recovery of "post-award, pre-judgment interest."

**1.     Applicable Law**

Texas courts are generally authorized to assess post-judgment interest in money judgments that accrues on the date judgment is rendered and ends on the date the judgment is paid. TEX. FIN. CODE ANN. § 304.005(a). Post-judgment interest accrues on the entire judgment, "including court costs awarded in the judgment and prejudgment interest." *Id*. § 304.003(a). Prejudgment interest is authorized for judgments in property damage cases. *Id*. § 304.102. Prejudgment interest "accrues on the amount of a judgment during the period beginning on the earlier of the 180th day after the date the defendant receives written notice of a claim or the date the suit is filed and ending on the day preceding the date judgment is rendered." *Id*. § 304.104.

Generally, "[a]rbitration awards earn post-judgment interest in the same manner as other judgments." *Pillitteri v. Brown*, 165 S.W.3d 715, 721 (Tex. App.—Dallas 2004, no pet.). A party is statutorily entitled to recover post-judgment interest on a final judgment confirming an arbitration award. *Bluestone Res., Inc. v. First Nat'l Cap., LLC*, 644 S.W.3d 815, 817 (Tex. App.—Dallas 2022, pet. denied). However, the Texas Arbitration Act does not authorize award of post-judgment interest in a judgment confirming an arbitration award if the arbitrator did not award post-judgment interest. *ETC Intrastate Procurement Co., v. JSW Steels (USA), Inc.*, 620 S.W.3d 168, 179 (Tex. App.—Houston [14th Dist.] 2021, no pet.).

15

## 2. Discussion

The arbitration award initially awarded pre-judgment interest of $254,130, but, as stipulated by Links, prejudgment interest should have only begun to accrue, at the earliest, on January 2, 2023, when initial pre-suit notice was sent. On this basis, the final judgment awarded pre-judgment interest of "$120,849.83 through June 28, 2024 and $222.56 a day until a final judgment is signed" and also awarded post-judgment interest from the date of the final judgment at a rate of 8.5%. According to Hofer, it was improper for the judgment to include any prejudgment interest from the date of the arbitration award, January 11, 2024, to July 7, 2024,—the date the judgment was signed—because the arbitration award itself did not award prejudgment interest up to and including entry of the judgment. Instead, Hofer asserts that the judgment should be modified for prejudgment interest to only accrue from January 2, 2023, to January 10, 2024, the day before the award. Hofer further contends that any attempt by the arbitrator to award post-judgment interest is invalid and unauthorized.

Conversely, appellees argue the arbitrator's award did provide for interest to accrue after entry of the award until paid because the award authorizes interest to commence from thirty-one days following the award until the award is paid in full. Appellees argue this language authorized the trial court to award prejudgment interest from February 12, 2024, (i.e. the thirty-first day after the award) to July 7, 2024, in its judgment[4] and that the award's characterization of this interest as post-judgment interest is a semantic distinction without significance.

We agree with appellees that the interest the arbitrator awarded is properly

---

[4] Appellees concede that the arbitration award did not authorize the trial court to award any interest attributable to the thirty-one day period following entry of the award.

16

characterized as prejudgment interest. Based on our review, we conclude that it was proper for the trial court to award interest from February 12, 2024, to July 7, 2024. Our guiding principle is to indulge "reasonable presumptions" to affirm an arbitration award. *See In re Chestnut Energy Partners, Inc.*, 300 S.W.3d at 397. While Hofer argues that the arbitration award only authorized award of post-judgment interest to run after the award and that such award is impermissible, the arbitrator's award sought to apply interest from the time following the thirty-first day after the award until the award is paid. While the arbitrator classified that as post-judgment interest, the trial court's entry of a final judgment made the period from February 12, 2024 to July 7, 2024, "pre-judgment" by fact. Accordingly, it is a "reasonable presumption" to affirm the arbitration award's award of interest as one of prejudgment interest. *See id*.

Hofer relies on *Blumberg v. Bergh* for its argument that an arbitration award is not permitted to award post-judgment interest. No. 02-0400138-CV, 2005 WL 1047592 (Tex. App.—Fort Worth May 5, 2005, no pet.) (mem. op.). Hofer further argues *Blumberg*'s holding prohibits the award of interest on this post-award, pre-judgment period. We note that our sister courts appear to be in conflict on the exact parameters of when interest can be awarded following an arbitration award. *See Bluestone Res., Inc.*, 644 S.W.3d at 817.

We need not resolve that conflict in determination of this issue today because *Blumberg* is distinguishable from the present facts. In *Blumberg*, the trial court's judgment "not only confirmed the arbitration award, but also added post-award, prejudgment interest to the amount awarded by the arbitrator." *Id*. at 816. The judgment then set post-judgment interest to accrue on the total amount owed, including post-award interest,

17

without the arbitration award authorizing such interest. *Id*. (citing *Blumberg*, 2005 WL 1047592, at \*6). Thus, the central error of the trial court was that the arbitration award did authorize any such award of interest. *Id*.

Conversely, here, the arbitration award did expressly authorize award of interest on the period between February 12, 2024, to July 7, 2024. Therefore, *Blumberg*'s holding is not applicable here. The final judgment thus need only be corrected to match what the arbitrator expressly authorized.

Accordingly, we sustain Hofer's third issue only in part so as to remand to the trial court with instructions to render judgment (1) omitting all prejudgment interest awarded between January 11, 2024, to February 12, 2024, and (2) providing that post-judgment interest shall accrue only on the modified judgment amount.

**E.    Liens**

In its fourth and final issue, Hofer argues the judgment should be modified to remove relief regarding two liens Hofer attached to the construction properties. The final judgment ordered that Hofer's lien affidavits "are removed and are invalid as a matter of law and shall be removed by [Hofer] from the Tarrant and McLennan County official public records no later than ten days after the date of this Final Judgment." Hofer asserts that it was improper for the judgment to remove and invalidate its liens for two reasons: (1) the arbitration award did not address the request for lien relief, and (2) the judgment's requirement that Hofer remove the liens from the "official public records" is impossible to satisfy. Appellees assert this relief was proper and comports with the award.

The parties do not dispute that the arbitration award does not directly discuss the merits of the lien claims. However, appellees argue that, because the arbitration award

18

included a Mother Hubbard clause stating "[a]ll relief not expressly granted herein is, hereby, denied," it should be interpreted as having denied Hofer's request for lien relief. "Mother Hubbard clauses are problematic because they are open to interpretation." *Farm Bureau Cty. Mut. Ins. Co. v. Rogers*, 455 S.W.3d 161, 163 (Tex. 2015). The Texas Supreme Court has "rejected the notion that a Mother Hubbard clause gives 'any indicia of finality in any order not issued after a conventional trial.'" *Id*. (quoting *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 204 (Tex. 2001)). "Thus, Mother Hubbard clauses do not, on their face, implicitly dispose of claims not expressly mentioned in the order." *Id*. at 164.

There is scant authority regarding the ability of a trial court to explicitly deny relief unmentioned in an arbitration award containing a Mother Hubbard clause. However, those cases examining whether a trial court can modify an arbitration award to add relief not expressly addressed by the arbitration all find it improper. *See, e.g., Guerra v. L&F Distribs., LLC*, 521 S.W.3d 878, 887–88 (Tex. App.—San Antonio 2017, no pet.) (finding trial court's modification of award to make subject to tax withholding was improper); *see also Thomas Petroleum, Inc. v. Morris*, 355 S.W.3d 94, 99 (Tex. App.—Houston [1st Dist.] 2011, pet. denied); *Barnes v. Old Am. Mut. Fire Ins. Co.*, No. 03-07-00404-CV, 2010 WL 668913, at *8 (Tex. App.—Austin Feb. 26, 2010, no pet.) (mem. op.). While appellees argue that the arbitration award does not provide for the enforcement of the liens Hofer sought at the arbitration hearing, *see Rogers*, 455 S.W.3d at 163, the Texas Supreme Court has disavowed the use of Mother Hubbard clauses to implicitly dispose of claims. *Id*. at 164.

Moreover, and on a more basic level, the statutory scheme makes clear that a trial court should modify or correct—not clarify—an award on a limited basis. TEX. CIV. PRAC.

19

& REM. CODE ANN. § 171.091; *see id.* § 171.087. In this case, clarifying an award to address the merits of a claim, i.e., ordering specific relief sought by a party, exceeds the trial court's statutory authority for judicial review by presuming the arbitrator's intent. *See id.* § 171.091. As obvious as it may be based on the reading of the Mother Hubbard clause and the relief Links obtained against Hofer, the Texas Arbitration Act leaves to the arbitrator the resolution of all matters submitted to arbitration and the rendering of a conclusive award; the courts cannot deduce through interpretation of an award that the arbitrator should have intended to order the removal of liens when denying a claim for relief. It is for the courts to simply limit their review of an arbitration award as directed by statute and seek clarification from the arbitrator when it is necessary.

Therefore, we find it was improper for the trial court to modify the arbitration award in its final judgment to include explicit relief removing the liens. Instead, we find that the award is ambiguous because it purports to be final without addressing Hofer's lien-based claim. *See Gunnerson*, 477 S.W.3d at 855–56. The proper recourse was for the trial court to remand the award back to the arbitrator for the limited purpose of clarifying the arbitrator's disposal of the lien issues, though this "is but a preface to confirmation of the award." *See Werline*, 307 S.W.3d at 270–71. We sustain Hofer's fourth issue.

### III.    CONCLUSION

We reverse the trial court's judgment in part and remand with instructions to remand to the arbitrator for the sole purpose of clarifying the arbitrator's intended relief regarding Hofer's liens. Upon receiving the arbitrator's amended award, we further instruct the trial court to render judgment (1) reflecting the arbitrator's clarifications on the lien relief; (2) correcting the arbitration award pursuant to § 171.091 to change all

20

references of "the Project" to "the Brazos Promenade" and all references to the "Brazos Lofts" to "Burnett Lofts"; and (3) modifying the judgment to omit all prejudgment interest awarded between January 11, 2024, to February 12, 2024 and to provide that post-judgment interest shall accrue only on the modified judgment amount. We otherwise affirm the final judgment.

YSMAEL D. FONSECA
Justice

Delivered and filed on the
4th day of December, 2025.